214 N.J. Super. 558 (1987)
520 A.2d 783
STATE OF NEW JERSEY IN THE INTEREST OF A.B., JUVENILE-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 2, 1986.
Decided January 5, 1987.
*560 Before Judges MICHELS, SKILLMAN and LANDAU.
Bernadette DeCastro, Assistant Deputy Public Defender, argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney; Bernadette DeCastro, of counsel and on the brief).
Gary H. Schlyen, Special Deputy Attorney General, Acting Senior Assistant Prosecutor, argued the cause for respondent (John P. Goceljak, Special Deputy Attorney General In-Charge, Acting Passaic County Prosecutor, attorney; Gary Schlyen, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
This is an appeal from an order of the Chancery Division, Family Part, waiving jurisdiction to the Law Division of charges against a juvenile for what would constitute the adult crimes of conspiracy (N.J.S.A. 2C:5-2), armed robbery (N.J.S.A. 2C:15-1), murder (N.J.S.A. 2C:11-3) and unlawful possession of a handgun (N.J.S.A. 2C:39-5(b)).
The case arises out of an armed robbery of a grocery store in which the owner was shot and killed. Evidence was presented at the waiver hearing that the juvenile, A.B., who was 17 at the time of the hearing, committed the crime along with three other juveniles. The evidence included confessions by each of the *561 juveniles which indicated that the crime had been planned at least a day in advance and that the juveniles planned to kill the owner in order to prevent him from later identifying them. A.B. was the one who actually fired the weapon.
After conducting a joint waiver hearing lasting five days, the trial judge concluded that the charges against all four juveniles should be referred to the Law Division. We granted motions by the juveniles for leave to appeal and calendared the cases for argument on the same day. We conclude that the Family Court properly waived jurisdiction of the charges against A.B. and the other juveniles.[1] Therefore, we affirm.

I.
A.B. argues that he is "developmentally disabled" and therefore that under N.J.S.A. 2A:4A-44(c)(2) the trial judge had no authority to waive the charges against him to the Law Division. This section provides:
The following juveniles shall not be committed to a State correctional facility:
........
(2) Juveniles who are developmentally disabled as defined in paragraph (1) of subsection 3 of P.L. 1977, c. 82 (C. 30:6D-3a(1)).[2] *562

*563 Preliminarily, we note that A.B.'s counsel failed to indicate at the commencement of the waiver hearing that he would attempt to show that his client was "developmentally disabled." Indeed, he indicated in a colloquy regarding the qualifications of one of his expert witnesses that the purpose of the proposed testimony was to show that there was a probability A.B. would be rehabilitated prior to reaching the age of 19. See N.J.S.A. 2A:4A-26a(3). No mention was made of any intent to show that A.B. was "developmentally disabled." Furthermore, the testimony of both experts presented on behalf of A.B. was directed solely at his capacity for rehabilitation prior to age 19. Hence, neither expert considered the statutory criteria for determining whether a juvenile is "developmentally disabled." In fact, the summation of A.B.'s counsel was the first time it was suggested that waiver of A.B.'s case to the Law Division might be inappropriate because he is "developmentally disabled." There is also no mention of this argument in the trial court's opinion granting the waiver motion, perhaps because A.B.'s proofs were not addressed to the statutory prerequisites for such a finding.
On appeal A.B. relies upon testimony presented at the waiver hearing concerning his capacity for rehabilitation in order to demonstrate that he is "developmentally disabled." He points, for example, to a statement by one of his experts, Dr. Seymour Canter, that he has a "developmental lag." However, Dr. Canter attributed this lag to cultural and social influences and concluded that it could be overcome by a program which "really shuts out the values of the street" and teaches A.B. vocational skills and how to read. A.B. also relies upon the opinion of the State's expert, Dr. Stanley R. Kern, that A.B. is suffering from "minimal brain dysfunction and a *564 low borderline intelligence" which would "interfere with his ability to evaluate and to make judgments about things." However, his opinion falls short of a conclusion that A.B. has the type of "severe, chronic disability" which would justify his classification as "developmentally disabled" within the intent of N.J.S.A. 30:6D-3(a) and N.J.S.A. 2A:4A-44(c)(2).
In any event, assuming the record would support the conclusion that A.B. suffers from a "developmental disability," this would not preclude waiver of the charges against him to the Law Division. N.J.S.A. 2A:4A-26, which is entitled "Referral to another court without juvenile's consent," and N.J.S.A. 2A:4A-27, which is entitled "Referral to other court at election of juvenile," set forth precise criteria which the Family Court is required to apply in determining whether to waive jurisdiction over a complaint against a juvenile. There is no indication that N.J.S.A. 2A:4A-44, which is entitled "Incarceration  Aggravating and mitigating factors," was intended to qualify the criteria for waiver set forth in N.J.S.A. 2A:4A-26 and 27. Rather, the intent of N.J.S.A. 2A:4A-44 is to provide criteria for determining whether a juvenile adjudicated delinquent by the Family Court should be incarcerated and, if so, the length of incarceration and the terms of release.[3]
The conclusion that N.J.S.A. 2A:4A-44(c)(2) was not intended to preclude the waiver of charges against a "developmentally disabled" juvenile is reinforced by the preceding subsection, N.J.S.A. 2A:4A-44(c)(1), which provides:
The following juveniles shall not be committed to a State correctional facility:
(1) Juveniles age 11 or under unless adjudicated delinquent for the crime of arson or a crime which, if committed by an adult, would be a crime of the first or second degree. [Emphasis added].
*565 Under this subsection, even very young children are subject to incarceration for serious crimes. Therefore, the interpretation of N.J.S.A. 2A:4A-44(c)(2) advanced on behalf of A.B. would have the anomalous consequence of subjecting very young juveniles to incarceration under circumstances in which older "developmentally disabled" juveniles would be exempt from incarceration. An interpretation of a statute which leads to such unreasonable results should be avoided. See State v. Gill, 47 N.J. 441, 444 (1966).
Therefore, we conclude that the Legislature intended that charges of a serious crime such as murder against any juvenile over the age of 14, including one who is "developmentally disabled," may be waived to the Law Division. However, a Family Court judge may consider the psychiatric condition of a juvenile, including any developmental problems, in determining whether waiver would be appropriate under the criteria set forth in N.J.S.A. 2A:4A-26.

II.
A.B. also argues that the trial judge failed to give adequate consideration to evidence that he could be rehabilitated by age 19. However, we conclude substantially for the reasons set forth in the opinion of the Family Court that there was no abuse of discretion in the waiver of this case to the Law Division. See State v. Tuddles, 38 N.J. 565, 572 (1962); State In Interest of B.T., 145 N.J. Super. 268, 274 (App.Div. 1976), certif. den. 73 N.J. 49 (1977).
Under N.J.S.A. 2A:4A-26a(3), waiver to the adult court system of serious criminal charges including murder is required if there is probable cause to believe the juvenile committed the crime and he was 14 years or older at the time, unless "the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver." See State In Interest of *566 S.M., 211 N.J. Super. 675 (App.Div. 1986). In this case, it is undisputed that there is probable cause to believe that A.B. committed the crime and that he was over 14 at the time. Furthermore, the trial judge concluded that A.B. had failed to show that there were reasonable prospects for his rehabilitation by age 19. This conclusion is amply supported by the record.
The trial judge also properly concluded that even if a reasonable probability of rehabilitation had been demonstrated, it would not outweigh the reasons for waiver. The dominant "reasons for waiver" here are the crimes with which A.B. is charged  which include murder and armed robbery  and the strong public interest in "general and specific deterrence" of these crimes. State In Interest of S.M., supra, 211 N.J. Super. at 685. N.J.S.A. 2A:4A-26a(3) creates a presumption of waiver with respect to these crimes. Therefore, there was no need, as argued by A.B., for the State to show that the crimes with which he is charged were "committed in an especially heinous, cruel or depraved manner" or that "grave or serious harm was inflicted on the victim beyond that implicit in the offense itself" in order for waiver to be appropriate. The cases relied upon by A.B. to support the argument, such as State v. Martelli, 201 N.J. Super. 378 (App.Div. 1985) and State v. Link, 197 N.J. Super. 615 (App.Div. 1984), certif. den. 101 N.J. 234 (1985), deal with a completely different subject, that is, presumptive sentences and parole ineligibility terms under the Code of Criminal Justice. These cases hold that a sentencing court may not treat factors which are inherent in a crime as aggravating factors to justify exceeding the presumptive term for the offense or imposing a parole ineligibility term. However, the waiver of cases from the juvenile to the adult court is controlled by different statutory provisions. The statutory "presumption" when a juvenile 14 or older is charged with a serious crime is that the case will be waived to the adult criminal justice system. Therefore, it would be inconsistent with the intent of N.J.S.A. *567 2A:4A-26a(3) to impose a burden upon the State to show additional aggravating factors before charges of armed robbery and murder can be waived.[4]
This does not mean that the circumstances of the crime or of the alleged juvenile offender are irrelevant to a waiver determination. Rather, if a juvenile can show a "probability of his rehabilitation" prior to age 19, then the age of the offender, his prior record of delinquency, the circumstances of the crime and the role of the individual participant, all may be taken into account in determining whether to waive jurisdiction. However, the burden remains on the juvenile to show that "the probability of his rehabilitation ... substantially outweighs the reasons for waiver." See State in Interest of C.A.H. & B.A.R., 89 N.J. 326, 344-345 (1982).
In this case, the trial judge properly applied this statutory standard. He noted that the armed robbery had been carefully planned, the weapon had been tested, the juveniles had discussed killing the victim and the shooting had occurred without provocation by the victim. In addition, A.B. had previously damaged the victim's store during an attempted burglary for which he was sentenced to probation only two months before the murder. We concur fully with the trial court's observations concerning the seriousness of this crime and the inappropriateness under all the circumstances of declining waiver to the Law Division. See State in Interest of C.A.H. & B.A.R., supra; State in Interest of S.M., supra.
Accordingly, we affirm the waiver order of the Chancery Division, Family Part, and remand the matter to the Law Division for trial.
NOTES
[1] Separate opinions in the other three appeals are also being filed today.
[2] When the Code of Juvenile Justice was enacted in 1982 N.J.S.A. 30:6D-3a(1) stated:

"Developmental disability" means a disability of a person which
(1) is attributable to:
(a) mental retardation, cerebral palsy, epilepsy or autism;
(b) any other condition found to be closely related to mental retardation because such condition results in impairment of general intellectual functioning or adaptive behavior similar to impairment resulting from mental retardation or which requires treatment and services similar to those required for mental retardation; or
(c) dyslexia resulting from a disability described in subparagraphs (a) and (b);
However, the full definition of "developmentally disabled" set forth in N.J.S.A. 30:6D-3a also encompassed three additional paragraphs which stated:
(2) originates before such person attains age 18;
(3) has continued or can be expected to continue indefinitely; and
(4) constitutes a substantial handicap to such person's ability to function normally in society;
These three paragraphs were not incorporated by reference in the definition of "developmentally disabled" contained in N.J.S.A. 2A:4A-44(c)(2). By enactment of chapter 145 of the Laws of 1985 the Legislature amended N.J.S.A. 30:6D-3a to read as follows:
a. "Developmental disability" means a severe, chronic disability of a person which:
(1) is attributable to a mental or physical impairment or combination of mental or physical impairments;
(2) is manifest before age 22;
(3) is likely to continue indefinitely;
(4) results in substantial functional limitations in three or more of the following areas of major life activity, that is, self-care, receptive and expressive language, learning, mobility, self-direction and capacity for independent living or economic self-sufficiency; and
(5) reflects the need for a combination and sequence of special inter-disciplinary or generic care, treatment or other services which are of life-long or extended duration and are individually planned and coordinated. Developmental disability includes but is not limited to severe disabilities attributable to mental retardation, autism, cerebral palsy, epilepsy, spina bifida and other neurological impairments where the above criteria are met;
Thus, a substantial part of the definition of "developmentally disabled" formerly contained in N.J.S.A. 30:6D-3a(1), and incorporated by reference in N.J.S.A. 2A:4A-44(c)(2), was transferred to N.J.S.A. 30:6D-3a(5). The issue raised by this legislative history is whether the term "developmentally disabled" in N.J.S.A. 2A:4A-44(c)(2) should now be construed to incorporate by reference N.J.S.A. 30:6D-3a(1) as it read in 1982 or as it was amended in 1985. N.J.S.A. 1:1-3.3 provides:
Any reference in any statute to any other statute, which is revised by a revision law, shall, after the effective date of such revision law, be construed to be a reference to the section or sections, if any, of the revision law corresponding in substance to, or superseding, the section or sections of the statute so revised and so referred to.
See In re Application of Saddle River, 71 N.J. 14, 28 (1976); Capasso v. Pucillo, 132 N.J. Super. 473, 476 (App.Div. 1974). We read N.J.S.A. 1:1-3.3 to indicate that N.J.S.A. 2A:4A-44(c)(2) should be construed to incorporate by reference N.J.S.A. 30:6D-3a as amended in 1985 rather than as it read in 1982. However, the part of N.J.S.A. 30:6D-3a "corresponding in substance to" this statute as it read in 1982 is not limited to the current paragraph (1) but rather includes at least part of paragraph (5) and perhaps also part or all of paragraph (4). Since we conclude that A.B.'s alleged "developmental disability" would not in any event preclude the waiver of the charges against him to the Law Division, we have no occasion to definitively determine the current meaning of "developmentally disabled" under N.J.S.A. 2A:4A-44(c)(2). However, the problems which the 1985 amendment to N.J.S.A. 30:6D-3a raise with respect to the interpretation of N.J.S.A. 2A:4A-44(c)(2) may be an appropriate subject for legislative attention.
[3] If the charges against a juvenile are referred from the Family Court to the Law Division, the dispositional provisions of N.J.S.A. 2A:4A-44 are inapplicable. Such a juvenile is subject instead to the dispositional provisions of the Code of Criminal Justice, N.J.S.A. 2C:43-1 et seq.
[4] We disagree in this respect with the part of the opinion in State v. R.G.D., 208 N.J. Super. 385, 391 (App.Div. 1986), leave to appeal granted 104 N.J. 399 (1986), which relies upon Martelli in construing N.J.S.A. 2A:4A-26.