109 N.J. 195 (1988)
536 A.2d 240
STATE OF NEW JERSEY IN THE INTEREST OF A.B.
The Supreme Court of New Jersey.
Argued October 14, 1987.
Decided January 27, 1988.
*196 Bernadette DeCastro, Assistant Deputy Public Defender, argued the cause for appellant, A.B. (Alfred A. Slocum, Public Defender, attorney).
Gary H. Schlyen, Special Deputy Attorney General and Acting Senior Assistant Prosecutor, argued the cause for respondent, State of New Jersey (John P. Goceljak, Special Deputy Attorney General-In-Charge and Acting Passaic County Prosecutor, attorney).
Cecilia M. Zalkind submitted a brief on behalf of amicus curiae, Association for Children of New Jersey.
*197 PER CURIAM.
We granted certification, 107 N.J. 119 (1987), to consider the following question: whether N.J.S.A. 2A:4A-44c(2), which bars the Family Part from incarcerating in State correctional facilities "developmentally disabled" juvenile offenders, also has the correlative consequence of barring waiver of such "developmentally disabled" juveniles to adult court. In this case, we affirm the Appellate Division's conclusions that the condition of the juvenile, A.B., did not meet either the 1977 or the 1985 statutory definitions of "developmental disability" and that the Family Part properly waived jurisdiction of the charges against A.B. See State of New Jersey in the Interest of A.B., 214 N.J. Super. 558, 561-63 n. 2 (1987) (comparing the two applicable statutory definitions, L. 1977, c. 82, § 3 and L. 1985, c. 145, § 12).
A.B. and three other juveniles had been charged with the felony murder of a shopkeeper in Paterson. A.B. was sixteen years and nine months old at the time of the crime. The question of whether N.J.S.A. 2A:4A-44c(2) prohibits the waiver of a "developmentally disabled" juvenile was not specifically raised in the Family Part; rather, that court's focus was on the question of whether the waiver of one such as A.B., who was charged with the crimes of murder and armed robbery, was unjust. The Family Part characterized A.B. and his accomplices in the crime as "mature, street-wise individuals that knew exactly what they had planned and where they were going * * *." Although the testimony adduced at the waiver hearing revealed that A.B. suffers both from a minimal brain dysfunction and from a low intelligence quotient which places him in a borderline category of intellectual functioning, see City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 442 n. 9, 105 S.Ct. 3249, 3256 n. 9, 87 L.Ed.2d 313, 322 n. 9 (1985) (discussing four categories of mental retardation), we are satisfied that the record before the Family Part did not warrant a finding of functional impairment in the statutory sense of a "developmental disability."
*198 In addition, the Appellate Division correctly concluded that the dispositional restriction contained in N.J.S.A. 2A:4A-44c(2) does not perforce serve to bar waiver.[1] Rather, this provision reflects a legislative policy favoring noncustodial treatment of certain "developmentally disabled" juveniles who, for reason of age or the lack of commission of serious criminal offenses, are not subject to waiver. We affirm the judgment of the Appellate Division with respect to that aspect of the case, essentially for the reasons set forth in its reported opinion. State in the Interest of A.B., supra, 214 N.J. Super. at 564-65.
As the Appellate Division noted, N.J.S.A. 2A:4A-44c(2) is part of the Code of Juvenile Justice section entitled "Incarceration-Aggravating and mitigating factors." This section deals with incarceration of juveniles by the Family Part, setting forth, in addition to aggravating and mitigating factors in N.J.S.A. 2A:4A-44a(1) and (2) presumptions, in N.J.S.A. 2A:4A-44b, of nonincarceration for first-time juvenile offenders who commit fourth-degree crimes, and, in N.J.S.A. 2A:4A-44d, maximum incarceration terms for each offense, special parole rules for juveniles, and extended term provisions. These dispositional rules have no effect once a juvenile is waived. State v. R.G.D., 108 N.J. 1 (1987).
This internal structure creates the inference that N.J.S.A. 2A:4A-44c, like the other subsections, also applies only when the juvenile has not been waived into adult court. Although the dispositional restriction of N.J.S.A. 2A:4A-44c(2) remains absolute within its domain  no "developmentally disabled" juvenile *199 may be incarcerated by the Family Part  the restriction does not per se qualify the waiver rules set forth in N.J.S.A. 2A:4A-26.[2]
We add the following observations about the process of waiver in cases in which a "developmentally disabled" juvenile is before the court. We recently had occasion to review the "legislative preference" for the Family Part to waive jurisdiction, pursuant to N.J.S.A. 2A:4A-26, of juveniles charged with crimes of murder, robbery, sexual assault, and similar serious offenses. State v. R.G.D., supra, 108 N.J. at 12. Under N.J.S.A. 2A:4A-26, the Family Part's range of discretion with respect to the waiver decision has been considerably narrowed with respect to the more serious offenders. Juveniles charged with the crimes of murder, robbery, and similar serious offenses set forth in N.J.S.A. 2A:4A-26 are the primary candidates for waiver to the adult courts. In R.G.D., supra, we referred to such offenders as "Chart 1" offenders and characterized other waiver-eligible juveniles as "Chart 2" offenders. 108 N.J. at 12-14. We also concluded that, in the case of "Chart 1" offenders, N.J.S.A. 2A:4A-26 creates a "legislative preference or presumption in favor of waiver." Id. at 12. However, within the framework of the statute, the Family Part must still balance the value of probable rehabilitation of the juvenile offender, if shown, against the general deterrent value of exposing the offender to the more severe sentences available to the adult court.
*200 When evaluating the rehabilitative potential of a defendant possessing a "developmental disability," however, we note that the concept of rehabilitation, required as a preliminary finding to retention in "Chart 1" cases and as a balancing factor in "Chart 2" cases, does not contemplate a showing that the "developmental disability" will be removed before the juvenile attains the age of nineteen. The "developmentally disabled" juvenile is to suffer no handicap in the waiver court on this account. While there may be some correlation between slow learning and the commission of crimes, we suspect that the correlation is as much a result of background factors as of any direct link between the two. "[R]esearch, as yet, has failed to demonstrate any substantial `causal' relationship between learning disabilities and juvenile delinquency." Pickar and Tori, "The Learning Disabled Adolescent: Eriksonian Psychosocial Development, Self Concept, and Delinquent Behavior," 15 J. Youth & Adolescence 429, 438-39 (1986). The question the waiver court must resolve is whether the juvenile is likely, before he attains the age of nineteen, to be led away from a path of crime by the processes of social rehabilitation available to the court.
Within this framework, then, if such rehabilitation can be demonstrated, we would expect that a court finding a "developmentally disabled" juvenile before it would be sensitive to allocating the appropriate weight to the disability when viewing the "evidential axis" that will guide its decision in the waiver process. State v. R.G.D., supra, 108 N.J. at 12-13. Our State has a "strong moral and legal commitment to care for the handicapped." New Jersey Ass'n for Retarded Citizens, Inc. v. New Jersey Dep't of Human Servs., 89 N.J. 234, 249 (1982). N.J.S.A. 2A:4A-44c(2) reflects this commitment. In this context, it is difficult to contemplate the incarceration, without care, of an autistic or a severely retarded child.
Recent published reports have highlighted the continuing problem of identifying dispositional alternatives to incarceration *201 for "developmentally disabled" juveniles. The Executive and Legislative branches have requested that the Juvenile Delinquency Disposition Commission establish a special task force to study this question; the Commission's recommendations are to be released within six months of the effective date of the Act. [L. 1987, c. 235, effective August 3, 1987.] This study should help to clarify the relationship between the definitional criteria of "developmental disability" under N.J.S.A. 30:6D-3a as incorporated in the Code of Juvenile Justice and the definition of "handicapped children" within the context of the Education of the Handicapped Act, 20 U.S.C.A. § 1400-85. Even within the correctional setting, the handicapped should not be deprived of their right to treatment. We expect that the Task Force's efforts will provide additional guidance to courts in the resolution of these issues.
For the reasons stated, the judgment of the Appellate Division is affirmed.
For affirmance  Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN  7.
Opposed  None.
NOTES
[1] The provision, contained among the various dispositional factors and alternatives available to the Family Part, provides that:

c. The following juveniles shall not be committed to a State correctional facility:
* * * * * * * *
(2) Juveniles who are developmentally disabled as defined in paragraph (1) of subsection a. of section 3 of P.L. 1977, c. 82 (C. 30:6D-3a(1)). [N.J.S.A. 2A:4A-44c(2).]
[2] The Appellate Division concluded that this interpretation was strengthened by an "anomalous consequence" that would result from A.B.'s construction of the statute. State of New Jersey in the Interest of A.B., 214 N.J. Super. 558, 565 (App.Div. 1987). The court noted that N.J.S.A. 2A:4A-44c(1) also prohibits the incarceration of "[j]uveniles aged 11 or under unless adjudicated delinquent for the crime of arson or a crime which, if committed by an adult, would be a crime of the first or second degree. [Emphasis added]." Id. at 564 (quoting N.J.S.A. 2A:4A-44c(1)). The Appellate Division reasoned that A.B.'s interpretation of the provision would "subject[] very young juveniles to incarceration under circumstances in which older `developmentally disabled' juveniles would be exempt from incarceration." Id. at 565.