issue under the provisions of *N.J.S.A.* 40:55D–73.   *R.* 2:11–3(e)(1)(E).

Consequently, we reverse and remand to the trial court for further action consonant with this opinion.

STATE IN THE INTEREST OF S.T.

Superior Court of New Jersey
Appellate Division

Submitted April 19, 1989—Decided June 12, 1989.

Before Judges KING, ASHBEY and SKILLMAN.

*Alfred A. Slocum,* Public Defender, attorney for appellant (*Barbara J. Williams,* Designated Counsel, of counsel and on the brief).

*Steven S. Neder,* Cumberland County Prosecutor, attorney for respondent (*LuAnn Watson,* Assistant Prosecutor, of counsel; *Ralph A. Paolone,* Assistant Prosecutor, on the letter brief).

The opinion of the court was delivered by

ASHBEY, J.A.D.

On August 6, 1986, S.T. received a juvenile delinquency disposition committing her to the New Jersey Training School (McCorkle)[1] for having committed the following offenses had she been an adult: (1) for an incident occurring on July 2, 1985: FJ–06–936–86A for assault, *N.J.S.A.* 2C:12–1a(a) (disorderly persons offense), to an indeterminate term not to exceed one year;[2] FJ–06–937–86A for aggravated assault, *N.J.S.A.* 2C:12–

---

[1] In the record the training school to which S.T. was committed is variously described as "Jamesburg" or "Skillman." These references are to names of places. By *N.J.S.A.* 30:1B–8, effective November 30, 1988, the applicable training school has been redesignated the Lloyd McCorkle Training School for Boys and Girls. We thus refer to it here as McCorkle.

[2] Although the order of disposition provides for a fourth degree simple assault, the maximum offense under *N.J.S.A.* 2C:12–1a(1) is disorderly persons.

1b(2) (third degree), to an indeterminate term not to exceed two years; FJ–06–938–86A for possession of a weapon for an unlawful purpose (chair), *N.J.S.A.* 2C:39–4d (third degree), to an indeterminate term not to exceed two years; FJ–06–939–86A for unlawful possession of a weapon (chair), *N.J.S.A.* 2C:39–5d (disorderly persons offense), to an indeterminate term not to exceed six months; FJ–06–3104–86A for aggravated assault, *N.J.S.A.* 2C:12–1b(5)(a) (fourth degree), to an indeterminate term not to exceed one year;[3]

(2) for a second incident which occurred on April 9, 1986: FJ–06–2547–86A for aggravated assault, *N.J.S.A.* 2C:12–1b(5)(d)[4] (fourth degree), to an indeterminate term not to exceed one year; FJ–06–2548–86A for resisting arrest, *N.J.S.A.* 2C:29–2 (fourth degree), to an indeterminate term not to exceed one year.[5] All dispositions were to run concurrently and she received credit for 81 days in detention.

S.T.'s notice of appeal was filed on September 18, 1986. Relevant transcripts were received by the Clerk of the Court November 20, 1986. Her appellate brief was filed by substituted designated counsel on May 5, 1988. The prosecutor's re-

---

[3]FJ–06–3104–86A should have merged with FJ–06–937–86A and FJ–06–939–86A should have merged with FJ–06–938–86A. Nor was there authority to have entered a custodial term of over six months in FJ–06–936–86A, *N.J.S.A.* 2A:4A–44d(1)(g). These errors are not raised on appeal and should be corrected on S.T.'s record.

[4]The original complaint apparently charged S.T. with aggravated assault in the second degree (*N.J.S.A.* 2C:12–1b(1)). The court allowed the State to amend the complaint to simple assault which was aggravated because S.T. assaulted a teacher. *N.J.S.A.* 2C:12–1b(5)(d). That action is not appealed from.

[5]The pre-disposition report erroneously indicates that S.T. said she pleaded guilty to some of these charges. She was tried and found guilty of all of them.

sponding brief was filed October 11, 1988.[6] The appeal was calendared before us for April 19, 1989.

On appeal S.T.'s only challenge to the delinquency adjudication is that her defense counsel's trial performance constituted ineffective assistance of counsel. S.T. was charged with two assaults, one in 1985 and one in 1986. The 1985 charges arose while she was at McCorkle. There S.T. became involved in an altercation with another McCorkle resident. A senior corrections officer interceded, and, with the help of staff and McCorkle residents, broke up the fight. When S.T. heard she was to be placed in "lock-up,"[7] she swung a metal chair and hit the officer on the head.

S.T. described the event as follows:

> It was a chair beside me, and I said for you hitting my neck I'm gonna hit you. So she—wait a minute, she had came and said you hit me with that chair, you won't hit nobody else. And Miss Jackson she had came over, tried to get the chair away from me, and I went to hit Bonita with it and she got in the way and she got hit with it.

S.T. was not tried respecting the five charges stemming from this incident until considerably later. On November 8, 1985, she was recalled from McCorkle and placed on probation for one year with a condition that she enter and successfully complete the program at the Devereaux School, a residential school in Pennsylvania. For reasons described as "legal," S.T. entered Devereaux but was retransferred to Pinelands Learning Center (Pinelands), a New Jersey learning center with programs for emotionally disturbed children.

On April 9, 1986, three weeks after S.T. returned to Pinelands, she was in another altercation with a student. S.T.'s teacher attempted to subdue them. S.T. hit her. The teacher

---

[6]On October 11, 1988, the State filed a notice of motion to file this brief *nunc pro tunc* which was granted November 15, 1988. The case was marked perfected by the clerk's office December 21, 1988.

[7]A lock-up is a separate room with a bed, window, sink and toilet where a juvenile may be confined alone.

fell to the floor. The desk fell on them. As S.T. left the room, against the teacher's order, she shoved the teacher against the door. The teacher testified that she received bruises, a stiff neck, headaches and numbness in her left arm. When New Jersey State Police Trooper Robert Kwapp advised S.T. she was being put under arrest, S.T. started punching and biting. She had to be wrestled by two troopers to the ground and hand-cuffed. She continued to resist being taken from the building.

S.T. testified she was attacked by the other student and when the teacher tried to break it up, they ended up on the floor. S.T. admitted she left the room against orders to call her mother. She denied trying to fight the officers. She said she would not give the trooper her hand. Then the trooper threw her on the floor and started fighting her.

For the first incident the Family Part judge found S.T. guilty of simple assault on the other McCorkle resident, aggravated assault by attempting to cause bodily injury to the corrections officer with a weapon, possession of a weapon for unlawful purposes and unlawful use of a weapon. For the second incident the Family Part judge found S.T. guilty of aggravated assault by committing simple assault on a teacher and resisting arrest.

Our review of the record persuades us that S.T.'s first argument challenging the effectiveness of her counsel at the trial resulting in her adjudication is clearly without merit. *R.* 2:11–3(e)(2). The evidence of her guilt of the merged charges was overwhelming. Thus, any deficiency of counsel could not have effected a different result and is not cause for reversal. *State v. Fritz,* 105 *N.J.* 42, 60 (1987).

We concentrate on her remaining argument, a challenge to her disposition. According to the pre-disposition report, S.T. was born August 28, 1972, the youngest of 14 children. She lived with her mother, an older sister and several other rela-tives. She first became involved with the juvenile system in 1980. The record shows that by age 13 S.T. had an extensive

record of assaults and aggressive behavior toward her peers, her teachers and police officers, including fist fights, punching or shoving teachers, using bottles and knives as weapons and resisting arrest. Thorazine and mellaril had been prescribed to control her aggressive behavior.

We recite here in some detail the failure of the community and delinquency procedures to have alleviated S.T.'s delinquency behavior and her troubled history.[8] On March 21, 1983, S.T. was given a probationary term of one year and ordered to attend a diagnostic and counseling program. On November 30, 1983, her probation was extended one year. She was ordered to attend the Cumberland County Juvenile Advocacy Counseling Program. On June 21, 1984, she received a continued disposition for one year (*N.J.S.A.* 2A:4A-43b(1); *R.* 5:24-3). It was recommended that she undergo a complete evaluation and treatment at Brisbane. At Brisbane in 1984 S.T. was classified as being perceptually impaired and described as immature. She was further diagnosed as suffering from a schizophrenic form of disorder. While at McCorkle in 1985, however, S.T. was diagnosed as having a conduct disorder. Her July 18, 1985 psychiatric report said that her aggression was planned, based on her belief "that if one remains aggressive long enough one can determine the conditions of peace." She was also there described as being emotionally immature, having a low self-esteem and having problems relating with peers and authority figures. On March 15, 1985, following a delinquency adjudication that she was guilty of possession of a weapon for an unlawful purpose, aggravated assault and resisting arrest, she was placed at McCorkle for an indeterminate term not to exceed two years. She was also referred to DYFS for a

---

[8]In a 1985 interview at McCorkle, S.T. stated that her father tried to rape her at age 8, and that she was sexually assaulted by a staff member while at the Arthur Brisbane Child Treatment Center (Brisbane) in 1984. The record also indicates that she said she had tried to commit suicide by putting her head in a toilet, and had once overdosed on mellaril.

residential placement. It was during this commitment that the first incident forming the basis of this appeal occurred.

The primary basis for the public defender's argument that S.T. should receive another disposition is that she was classified as emotionally disturbed and attended Pinelands, receiving special instruction for the emotionally disturbed.[9] She was thus "handicapped" under 20 *U.S.C.A.* § 1401(a)(1) of the Education of the Handicapped Act (Act) and *N.J.A.C.* 6:28–3.5. As "handicapped" under the Act she required an individualized educational program (I.E.P.), containing:

(A) a statement of the present levels of educational performance of such child,

(B) a statement of annual goals, including short-term instructional objectives,

(C) a statement of the specific educational services to be provided to such child, and the extent to which the child will be able to participate in regular educational programs,

(D) the projected date for initiation and anticipated duration of such services, and

(E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved. [20 *U.S.C.A.* § 1401(a)(19)]

In this appeal the public defender asserts that the Act prohibits school expulsion of a handicapped student for misbehavior that is a manifestation of her handicap and that the New Jersey Department of Education regulations relating specifically to the discipline of handicapped children, *N.J.A.C.* 6:28–2.8, apply to S.T. If so, an independent evaluation of the child's educational needs was necessary prior to any action of expulsion or change in placement under 20 *U.S.C.A.* § 1415(b)(1)(A); *N.J.A.C.* 6:28–2.8(d) & (e).[10]

---

[9]Counsel also asserted that S.T. was "developmentally disabled" and therefore not subject to incarceration. *N.J.S.A.* 2A:4A–44c(2). *But see In the Interest of A.B.,* 109 *N.J.* 195, 197 (1988). *See also Past Due: Final Report of the Mental Health Forum, New Jersey Governor's Committee on Children's Services Planning* (1987) at 12, identifying all youth whose psycho-social problems necessitate family court action as "emotionally disturbed."

[10]In this argument counsel relies on cases involving disciplinary proceedings of handicapped students, *Kaelin v. Grubbs,* 682 *F.*2d 595 (6th Cir.1982); *S–1 v.*

Separately, the public defender urges that federal law mandates that defendant be educated in the least restrictive environment, 20 *U.S.C.A.* § 1412(5)(B), and that the Act prescribes that disruptive children are to be transferred to more restrictive placements only if and when their education significantly impairs the education of other children. Appellate counsel particularly criticizes S.T.'s disposition where the court had no record of whether her child study team recommended that S.T. return to the current placement and whether modification of her I.E.P. would foster her development.[11] Counsel also relies on 29 *U.S.C.A.* § 794 *et seq.* (the Rehabilitation Act).

We have noted that the bulk of S.T.'s claim relates to the disposition she received. This is particularly significant because the State's October 11, 1988 brief concerning S.T.'s August 6, 1986 disposition conceded S.T. should have a new disposition hearing, saying,

> Upon careful reading of the Education For All Handicapped Children act (EAHCA), 20 *U.S.C.* 1400 *et. seq.* and the defendant's thorough brief, the State agrees that this case should be remanded for resentencing. Although S.T. was deemed an emotionally disturbed child, there was no determination as to whether this would qualify her as handicapped, and *if* she is handicapped, whether her conduct was a result of her handicap.
>
> It should be noted that the EAHCA deals with a person's right to a free public education. It does not provide a defense to assault or unlawful possession of weapons. Thus, S.T.'s conviction should be affirmed. This case should

---

*Turlington,* 635 *F.*2d 342 (5th Cir.1981), *cert.* den. 454 *U.S.* 1030, 102 *S.Ct.* 566, 70 *L.Ed.*2d 473 (1981); *Lamont v. Quisenberry,* 606 *F.Supp.* 809 (S.D.Ohio 1984); *Doe v. Koger,* 480 *F.Supp.* 225 (N.D.Ind.1979); *Adams v. Central School Dist. No. 090,* 214 *Neb.* 307, 334 *N.W.*2d 775 (1983), *cert.* den. 464 *U.S.* 893, 104 *S.Ct.* 239, 78 *L.Ed.*2d 230 (1983). These cases are distinguishable because S.T. was not expelled (Pinelands was willing to take her back). Her commitment to a State institution based on a delinquency adjudication caused her transfer from Pinelands.

11When S.T. was in first grade she was evaluated by a child study team at her local school which recommended she be classified as perceptually impaired. S.T. was transferred to a private religious school, but was re-enrolled in public school in 1983. The only brief evaluation of S.T.'s educational needs recorded in this appeal was done at McCorkle on October 4, 1985. S.T.'s I.Q. was then tested to be in the low average range.

be remanded for resentencing. The new sentence should comply with the procedural safeguards provided by the Handicapped Act, The Rehabilitation Act, 29 *U.S.C.* 794, and *N.J.S.A.* 2A:4A–44c(2).

Although the prosecutor ultimately conceded that a new disposition hearing was required for S.T., her parole was completed by the time her appellate brief was filed. Not only is the disposition of this appeal moot, *see Cain v. New Jersey State Parole Board*, 78 *N.J.* 253, 255 (1978); *New Jersey State Parole Board v. Boulden*, 156 *N.J.Super.* 494, 496 (App.Div. 1978); *State v. Middleton*, 156 *N.J.Super.* 548, 551 (App.Div. 1978); *see also Brown v. Yeldell*, 487 *F.*2d 1210, 1212 (D.C. Cir.1973), but, by the time the case was calendared before us, S.T. had received another dispositional hearing on new charges.[12] We cannot remand the matter in 1989 for a Family Part judge to decide whether McCorkle was the least restrictive alternative for S.T. in August of 1986 even if that would have been the appropriate disposition had the application been brought before us in an expeditious manner.

We write because the mootness of this appeal illustrates certain inadequacies which we fear exist in the appellate process in cases involving juveniles. There is no rule which mandates acceleration of juvenile appeals.[13]

The progress of an appeal depends to a great extent on counsel. *R.* 1:2–5 provides:

In the scheduling of cases for trial, hearing or argument, the following classes of actions shall be given preference:

---

[12]We are advised by the McCorkle staff that S.T. is at the institution as of the writing of this opinion, but *not* for the dispositions appealed from. On October 2, 1987, S.T. was paroled for the disposition appealed from. She served her parole (ending February 15, 1988) without incident. On March 28, 1989, she was again committed to McCorkle on new assault charges.

[13]In connection with an Appellate Division project aimed at accelerating appeals involving the rights of children, we were advised that, as of December 7, 1987, absent a motion to accelerate, the average time of appeal was 16.1 months for juveniles adjudicated delinquent and represented by the public defender. We have no explanation for the delay between the perfection of this appeal in December 1988 and the date. it was calendared in April 1989.

> (1) all contested matters where a principal issue is the custody, status, welfare and protection of minors; criminal and quasi-criminal cases....

Notices of appeal provide a place to designate the applicability of this rule. *R.* 2:5–1(f)1, Appendix *IV.* Original defense counsel checked the box indicating that the rule was not applicable.[14]

There are other applicable appellate rules relating to motions, including a motion to accelerate, *see R.* 2:8–1;[15] motion for summary disposition, *R.* 2:8–3(b); motion to remand the matter to the Family Part, *R.* 2:9–1(a); *R.* 2:8–1. Where the primary appellate challenge is to a disposition, counsel should move to place the appeal on the sentencing calendar, and then move to file a brief, if necessary.

> In a criminal, quasi-criminal or juvenile action in the Appellate Division in which the only issue on appeal is whether the court imposed a proper sentence, briefs shall not be filed without leave of court and the matter shall be placed on a sentencing calendar for consideration by the court following oral argument. The appellate court at its discretion may direct the removal of any case from the sentencing calendar. [*R.* 2:9–11]

In any of the above motions, as well as in a motion for release pending appeal, *cf. R.* 2:9–4, or for stay pending appeal, *R.* 2:9–5, temporary emergency relief may be sought from a single appellate judge. *R.* 2:9–8.

█ Juveniles are entitled in relevant part to the full protection of the law applicable to criminal defendants, *N.J.S.A.* 2A:4A–40; *In re Gault,* 387 *U.S.* 1, 87 *S.Ct.* 1428, 18 *L.Ed.*2d 527 (1967), which means a complete appellate process. That process, however, should not occasion a delay which defeats the purpose. *Cf. State in the Interest of C.B.,* 173 *N.J.Super.* 424, 430 (App.Div.1980), certif. den. 84 *N.J.* 482 (1980). Delinquency

---

[14]There was a later substitution of counsel.

[15]Time periods for appeals "can and should be abbreviated on application by a party or on the court's motion in public matters whose urgency requires prompt disposition." *Pressler, Current N.J. Court Rules,* Comment *R.* 2:4–1 (1989); *cf. R.* 5:8–6; *R.* 5:12–4(a); *Matter of Baby M,* 109 *N.J.* 396, 467 (1988). Motions to extend time to file briefs were filed in this case.

trials are swiftly held and dispositions swiftly executed. *Ibid.*[16] In light of the evident seriousness of S.T.'s problems, we cannot conclude that the remand agreed on by counsel would have benefitted S.T., even if applied for in a timely manner. Nonetheless, given the potentially irreparable harm in delay, where applicable, particularized motions to accelerate should be made in all appeals from delinquency dispositions as a matter of course.

The adjudication of delinquency is affirmed, except for the required mergers previously noted. The orders of disposition are remanded to the Family Part to eliminate the separate dispositions on FJ–06–3104–86A and FJ–06–939–86A which merged with other dispositions and to reduce the custodial term of FJ–06–936–86A to six months.

_____

[16]Under *N.J.S.A.* 2A:4A–41 an incarcerated juvenile must receive a disposition within 30 days of adjudication.