661 A.2d 1288

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. CLARENCE SCOTT, DEFENDANT–APPELLANT.

Argued January 3, 1995—Decided August 7, 1995.

458

*Susan Green,* Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney).

*Terry S. Bogorad,* Assistant Prosecutor, argued the cause for respondent (*Ronald S. Fava,* Passaic County Prosecutor, attorney).

*Catherine A. Foddai,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Deborah T. Poritz,* Attorney General, attorney).

The opinion of the Court was delivered by

HANDLER, J.

This case requires the Court to consider the statutory concept of rehabilitation as a condition for determining whether a juvenile offender is eligible to be tried as an adult. Defendant was arrested for his alleged involvement in a series of armed robberies. Because defendant was only sixteen years old at that time, he was charged with acts of juvenile delinquency. The court held a waiver hearing and determined that defendant should be tried as an adult. Under the waiver statute, the court found that the State

had established probable cause to believe that defendant committed the offenses charged, and, further, that defendant had failed to establish the probability of his rehabilitation prior to reaching the age of nineteen and that the need for waiver outweighed any potential for rehabilitation.

The circumstance that poses special difficulty in interpreting and applying the statutory concept of rehabilitation in this case is that the defendant suffers from a serious and chronic mental illness, but is nonetheless amenable to treatment for that condition. The Court must consider whether and to what extent remission through treatment of an underlying mental illness may constitute rehabilitation in determining whether jurisdiction of the juvenile court should be waived.

I

On February 14, 1991, at approximately six o'clock in the evening, four juveniles wearing ski masks approached Benjamin Melendez and Bernard White, who were outside a tavern in Paterson. Defendant Clarence Scott, who was one of the juveniles, pointed a sawed-off shotgun at Melendez and White, while the others attempted to rob them. Finding no money on Melendez and White, the foursome left and dispersed.

Defendant and another juvenile, Dallas Brown, remained together. After walking a few blocks, they stopped on reaching Isaac Miranda, who was sitting in his parked car. Defendant tapped on the window with the shotgun, and Miranda was told to exit the car. After Miranda exited the car, a fight ensued. The shotgun discharged as Miranda attempted to gain control of it from defendant. Miranda was shot in the leg, and defendant and Brown fled in Miranda's automobile.

Defendant was charged in the Family Part of the Chancery Division (sometimes referred to as the "family court") as a juvenile with the following offenses that would have constituted these crimes if committed by an adult: third degree unlawful possession of a firearm, contrary to *N.J.S.A.* 2C:39–5c(1); third degree

possession of a prohibited weapon, contrary to *N.J.S.A.* 2C:39-3b; second degree possession of a weapon for an unlawful purpose, contrary to *N.J.S.A.* 2C:39-4a; three counts of fourth degree aggravated assault, contrary to *N.J.S.A.* 2C:12-1b(4); three counts of first degree robbery, contrary to *N.J.S.A.* 2C:15-1; second degree aggravated assault, contrary to *N.J.S.A.* 2C:12-1b(2); third degree aggravated assault, contrary to *N.J.S.A.* 2C:12-1b(2); and third degree hindering apprehension, contrary to *N.J.S.A.* 2C:29-3b(1).

Thereafter, based on the serious nature of the offenses charged, the State moved to waive jurisdiction from the Family Part of the Chancery Division to the Law Division and to have defendant tried as an adult. The State presented testimony of Detective Daley, who recounted the results of the robbery investigations. Her testimony established probable cause under the waiver statute for defendant to be tried as an adult.

Defendant presented the testimony of psychologist Frank J. Dyer, Ph.D. Dr. Dyer expressed the opinion that defendant was suffering from chronic undifferentiated schizophrenia, a disorder that could not be cured. However, Dr. Dyer stated that with proper treatment and supervision defendant could achieve a state of remission prior to reaching age nineteen.

The trial court determined that defendant could not be rehabilitated prior to reaching age nineteen, noting that defendant's mental disease would require treatment over an extended period of time, that proper treatment would require appropriate dosages of medication combined with psychotherapy, and that although a state of remission could be achieved through treatment, the disease would not be cured. The court, furthermore, concluded that even if Dr. Dyer's testimony did establish a probability of rehabilitation, that probability did not substantially outweigh the reasons for waiver.

After the family court waived jurisdiction and transferred the case to the Law Division, defendant was indicted in twelve counts for the adult crimes covering the juvenile offenses with which he

had been charged. Defendant then pled guilty to three counts of first degree robbery and one count of second degree aggravated assault. According to the plea agreement, the State recommended a maximum sentence of fifteen years with a seven-and-one-half year term of parole ineligibility.

The Law Division sentenced defendant to a fifteen-year term of imprisonment with a five-year period of parole ineligibility on each of the robbery charges, and a seven-year term of imprisonment with a three-year period of parole ineligibility on the assault charge. The sentences were to run concurrently.

Defendant appealed the waiver determination and the sentence imposed. The Appellate Division affirmed the waiver determination as well as the sentence. Defendant petitioned this Court for certification, seeking review of the determinations relating to his waiver to the Law Division and the excessiveness of the sentence imposed. The Court granted defendant's petition, 137 *N.J.* 313, 645 *A.*2d 141 (1994), but now vacates, as improvidently granted, the petition for certification relating to the issue of excessiveness of sentence.

II

Under *N.J.S.A.* 2A:4A–26(a), if a juvenile is charged with certain enumerated offenses the juvenile is subject to being tried as an adult. The family court may waive its juvenile jurisdiction and transfer the case for criminal prosecution. Once it is established by the prosecution that a juvenile is fourteen years of age or older at the time of the commission of the alleged offense and that there is probable cause to believe that the juvenile committed the offense in question, "no additional showing is required in order for waiver to occur." *State v. R.G.D.,* 108 *N.J.* 1, 11, 527 *A.*2d 834 (1987). Juveniles charged with those enumerated offenses are "the primary candidates for waiver to the adult courts," *ibid.,* because the statute has created a "presumption" of waiver for such juveniles. *Id.* at 12, 527 *A.*2d 834; *State in the Interest of A.J.,* 232 *N.J.Super.* 274, 292, 556 *A.*2d 1283 (App.Div.1989); *State*

*in the Interest of A.B.*, 214 *N.J.Super.* 558, 566, 520 *A.*2d 783 (App.Div.1987), *aff'd*, 109 *N.J.* 195, 536 *A.*2d 240 (1988).

That presumption of waiver, however, can be overcome if in any case the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted.

[*N.J.S.A.* 2A:4A–26(a)(3).]

The juvenile has the burden to establish both that there is a probability of rehabilitation prior to reaching the age of nineteen and that the probability of rehabilitation substantially outweighs the reasons for waiver. The statute requires a balancing of "the need for deterrence against the prospects of rehabilitation." *State in the Interest of C.A.H. & B.A.R.*, 89 *N.J.* 326, 344, 446 *A.*2d 93 (1982). That balancing occurs, however, only if the juvenile first establishes the probability of rehabilitation. *State in the Interest of A.J.*, *supra*, 232 *N.J.Super.* at 292, 556 *A.*2d 1283.

To establish the probability of rehabilitation, the juvenile typically presents expert testimony. Such testimony should relate the gravity of the crimes and the background of the juvenile offender to the prospects for rehabilitation, addressing various factors that will bear on the juvenile's amenability to rehabilitation, including the juvenile's age and the success rate of the proposed rehabilitation program. The length of time needed for the juvenile to complete the program is also relevant. *See State in the Interest of B.G.*, 247 *N.J.Super.* 403, 423–24, 589 *A.*2d 637 (App.Div.1991) (affirming lower court ruling that rehabilitation had not been established where juvenile was unlikely to receive sufficient therapy in the six months remaining before his nineteenth birthday). Further, because the probability of rehabilitation must be determined in light of the services available to the court, the expert should offer a specific rehabilitation plan. *See State in the Interest of A.L.*, 271 *N.J.Super.* 192, 213, 638 *A.*2d 814 (App.Div.1994) (agreeing with the lower court that the offer of "a vague plan of rehabilitation by psychiatric therapy" failed to

satisfy the burden of proof). Despite expert testimony which tends to establish the probability of rehabilitation, "[e]xpert testimony need not be given greater weight than other evidence or than it otherwise deserves in light of common sense and experience." *State in the Interest of C.A.H. & B.A.R., supra,* 89 *N.J.* at 343, 446 *A.*2d 93; *see State in the Interest of A.J., supra,* 232 *N.J.Super.* at 292, 556 *A.*2d 1283.

Mental illness clearly can be a pivotal factor in determining the prospect for rehabilitation as a condition bearing on waiver. Mental illness is significant because of its impact on the capacity of the juvenile for achieving rehabilitation. The focus, however, is not on the mental illness as such but its effects on the juvenile's conduct and behavior.

This Court, in *State in the Interest of A.B., supra,* 109 *N.J.* at 200, 536 *A.*2d 240, considered the standards for assessing the potential for rehabilitation as applied to a "developmentally disabled" juvenile. The Court recognized that a developmental disability constitutes a serious and chronic impairment that substantially affects behavior. *See, e.g., State in the Interest of R.M.,* 141 *N.J.* 434, 661 *A.*2d 1277 (1995). The Court concluded that the concept of rehabilitation for purposes of determining waiver of juvenile court jurisdiction "does not contemplate a showing that the 'developmental disability' will be removed before the juvenile attains the age of nineteen." Rather, "[t]he question the waiver court must resolve is whether the juvenile is likely, before he attains the age of nineteen, to be led away from a path of crime by the processes of social rehabilitation available to the court." *Ibid.* In that context, rehabilitation does not entail anything beyond successful treatment that can bring about socially-accepted behavior.

Although a juvenile's mental illness may make the juvenile less amenable to rehabilitation, it does not constitute a bar to a determination of potential for rehabilitation. *See Commonwealth v. Matthews,* 406 *Mass.* 380, 548 *N.E.*2d 843 (1990) (recognizing that juvenile's mental illness was an important factor militating in

favor of waiver but was not a *per se* condition requiring waiver); *J.A.L. v. State,* 162 *Wis.*2d 940, 471 *N.W.*2d 493, 505 (1991) (stating that "the fact that a child suffers a mental illness may favor waiver rather than retention in the juvenile system because the mental illness itself may make rehabilitation within the juvenile system less likely.").

The key to the statutory concept of rehabilitation in the context of a juvenile with a mental illness is the assurance, on a stable and continuing basis, that the juvenile offender will not engage in future criminal behavior. A mental illness that is chronic and incurable, however, is highly relevant in predicting future conduct, if that illness causes or contributes to criminal behavior. Hence, mental illness must be considered to be a critical factor in any determination of whether rehabilitation is feasible.

The existence of such mental illness must be evaluated in the light of all of the factors that form the basis for the determination of the likelihood of rehabilitation. The nature, extent and effect of such a mental illness must be analyzed, weighed and applied in that context. It is clear that treatment of the mental condition will be central to any determination of its significance and its impact on the prospect for rehabilitation. Consequently, the court should consider the period of time available for treatment; the projected period of time required for improvement or remission to be achieved; the basis for that projection, including the severity of the illness; the difficulty involved in identifying the appropriate treatment or medication; the response of the juvenile to prior treatment or medication, if any; and, the success rate of the proposed program for achieving and maintaining remission.

### III

We turn to the record to consider the evidence of rehabilitation in the analytical framework that is imposed when a juvenile suffers from a severe mental illness. The standard of review of

this issue, as a constituent aspect of a waiver determination, is whether the findings of fact are grounded in competent, reasonably credible evidence, whether correct legal principles were applied, and whether the trial court's decision constituted a clear error of judgment that shocks the judicial conscience. *State v. R.G.D., supra,* 108 *N.J.* at 15, 527 *A.*2d 834 (citing *State v. Roth,* 95 *N.J.* 334, 363–64, 471 *A.*2d 370 (1984)).

## A.

At the waiver hearing, the State established the grounds for waiver under *N.J.S.A.* 2A:4A–26 through the testimony of Detective Daley. Defendant, in an attempt to rebut the presumption of waiver, presented the testimony of Dr. Dyer to establish defendant's rehabilitative potential. *N.J.S.A.* 2A:4A–26(a)(3).

Dr. Dyer testified to defendant's history of suicide attempts and depression, his past treatment at juvenile psychiatric institutions, complaints of auditory hallucinations, substantiated allegations of child abuse and the inadequate discharge plans provided to defendant after his past releases from the psychiatric institutions. After describing the results of psychiatric tests administered during the personal evaluation, Dr. Dyer concluded that defendant suffered from "chronic undifferentiated schizophrenia." Dr. Dyer stated that defendant's condition first manifested itself in defendant's first suicide attempt at the age of seven, nine years prior to the commission of the current crimes. However, Dr. Dyer suggested that the "predisposition [may have been] present since birth."

Dr. Dyer acknowledged that there is a causal link between defendant's criminal behavior and his schizophrenia. Dr. Dyer stated that medication does not cure schizophrenia, but remission is possible. He testified that "[t]his disorder can be controlled through the administration of the proper anti-psychotic agent[s] ... They [the agents] can eliminate delusional thinking. They eliminate the feeling of panic or general unease that the schizophrenics feel ... provid[ed] that the right drug is found for the

individual's specific condition, [the agents] can restore a schizophrenic individual to a reasonably normal level of functioning."

Dr. Dyer testified that on past occasions, while under supervision and drug treatment in psychiatric institutions, defendant's condition had improved such that he did not act out and engage in anti-social behavior. Further, according to Dr. Dyer, defendant's reversion to his anti-social tendencies were caused by the State's failure to provide "an adequate discharge plan."

Dr. Dyer expressed the view that proper medication, education regarding the dosages and properties of medication, instruction regarding the interaction of medication and other substances, training regarding self-medication and individual counseling or therapy may result in the remission of defendant's condition. However, that result depends on "an adequate discharge plan," which includes assignment to a halfway house followed by outpatient psychotherapy and intensive probation supervision. Based on defendant's prior positive responses to institutionalization, Dr. Dyer concluded that defendant, provided with that treatment and aftercare, could comport with the rules of society prior to the becoming nineteen years of age.

Dr. Dyer's opinion with regard to defendant's potential for rehabilitation clearly focused on the probability of remission of defendant's mental condition, as opposed to its cure. However, on cross-examination, the following testimony was elicited:

> State: Doctor, do you have an expert opinion to a reasonable degree of certainly whether or not [for] Clarence Scott, there is a probability that he will be rehabilitated before his 19th birthday by the procedures available to the Family Court.
>
> Dr. Dyer: No.
>
> ✻ ✻ ✻ ✻ ✻ ✻ ✻ ✻
>
> State: Are there several variables which are present in this case which makes it impossible for you to have such an opinion.
>
> Dr. Dyer: My opinion is that he cannot.
>
> State: I'm sorry. I didn't understand the answer.
>
> Dr. Dyer: My opinion is that I cannot say that within a reasonable degree of psychological certainty this young man can be rehabilitated prior to reaching the

age of 19 according to the way in which the term rehabilitation is used in juvenile precedence in this State.

After that brief cross-examination, defense counsel conducted re-direct examination of Dr. Dyer, which seemed to confirm that Dr. Dyer's statement—defendant could not be rehabilitated—was premised on Dr. Dyer's assumption that the prosecutor was using the term rehabilitation to require something more than remission.

In response to additional questioning by the court, Dr. Dyer acknowledged that the treatment of schizophrenia normally takes "a good number of years." With regard to defendant's ability to achieve remission prior to reaching the age of nineteen, Dr. Dyer agreed that although defendant has a history of "responding very quickly" to treatment, defendant's prognosis is poor because of "the severity of defendant's symptoms" and "the number of years that have gone by without adequate treatment."

The following colloquy followed:

Court: So that from the public's point of view there is nothing to indicate that if this young man were placed back in society that he would not continue ... to act in [an] antisocial manner. We have no degree of certainty to assure the public of that fact?

Dr. Dyer: If Your Honor is referring to the standard for rehabilitation that indicates that the respondent will not commit the offense with—which he has been charged or similar offenses, then I would agree with that, Your Honor.

The trial court concluded that defendant did not meet his burden under *N.J.S.A.* 2A:4A–26(a)(3). It noted the long period of time required to treat schizophrenia coupled with the additional requirements of proper medication and continued psychotherapy. Moreover, it referred to Dr. Dyer's statement made during cross-examination in which he failed to express an opinion with medical certainty that the juvenile would be rehabilitated prior to the age of nineteen, as well as to the contingent nature of any potential rehabilitative efforts.

The Appellate Division, in affirming the judgment of the trial court, observed that Dr. Dyer exhibited "familiarity with the concept of rehabilitation as used in the Juvenile Code." The Appellate Division specifically found "the ... colloquy between the

judge and Dr. Dyer evidence[d] their mutual understanding of the correct standard." The court therefore concluded that there was no indication in the record that the trial court misunderstood the law to require cure of defendant's schizophrenia before the age of nineteen as opposed to requiring treatment that can effectively and substantially improve behavior. The Appellate Division also noted Dr. Dyer's response to the trial court in which he agreed that from the public's point of view there was nothing to indicate that if defendant were placed back in society he would not continue to act in an antisocial manner or that he would not revert to his past behavioral patterns.

The family court reasonably determined on the record that the most effective method of keeping schizophrenia in a state of remission is "effective medication coupled with psychotherapy over a long period of time." Although Dr. Dyer testified as to the implementation of a specific plan, he never established a success rate of that proposed plan. As previously noted, in evaluating the probability of rehabilitation, the degree of treatment necessary and success rate are relevant factors to consider. *See Matthews, supra,* 548 *N.E.*2d at 846 (sustaining trial court determination that there was little or no likelihood of rehabilitation within juvenile system due to length of time over which treatment would be required; and explaining that "[a]lthough expert testimony produced conflicting opinions as to the defendant's amenability to rehabilitation as a juvenile, even the most optimistic prognoses would place the defendant's rehabilitation well into adulthood."). Dr. Dyer acknowledged that defendant's condition called for intensive, consistent and extensive treatment over an indefinite period of time.

Notwithstanding the fact that Dr. Dyer's testimony failed to establish a success rate for defendant's treatment within the juvenile system, his testimony arguably supports the conclusion that defendant was amenable to rehabilitation, prior to reaching the age of nineteen. However, we are satisfied that the family court understood and applied the proper standard by which to

adjudge rehabilitation, and, because the court clearly determined that the reasons for waiver outweighed the probability of defendant's rehabilitation we need not further treat the issue of rehabilitation.

## B.

The family court determined that "[e]ven if I were to deem the doctor's testimony as showing that there's a probability of rehabilitation of this juvenile ... prior to reaching the age of nineteen, I do not find that that substantially outweighs the reasons for waiver."

As noted in *State in the Interest of A.B., supra,* 214 *N.J.Super.* at 567, 520 *A.*2d 783, once the probability of rehabilitation is established,

> then the age of the offender, his prior record of delinquency, the circumstances of the crime and the role of the individual participant, all may be taken into account in determining whether to waive jurisdiction. However, the burden remains on the juvenile to show that "the probability of his rehabilitation ... substantially outweighs the reasons for waiver."

 The reasons for waiver include both general and specific deterrence. *State in the Interest of S.M.,* 211 *N.J.Super.* 675, 685, 512 *A.*2d 570 (App.Div.1986). Therefore, a court must "balance the value of probable rehabilitation of the juvenile offender, if shown, against the general deterrent value of exposing the offender to the more severe sentences available to the adult court." *State v. R.G.D., supra,* 108 *N.J.* at 11–12, 527 *A.*2d 834. "It is upon this evidential axis that the waiver decision turns." *State in the Interest of C.A.H. & B.A.R., supra,* 89 *N.J.* at 344, 446 *A.*2d 93. "Considerations of deterrence, punishment, and rehabilitation should be integrated" to reach an appropriate accommodation "between the demands for individual and social justice." *Id.* at 339, 446 *A.*2d 93.

 Central to the balancing between rehabilitation and reasons for waiver is the concern for deterrence. *See State in the Interest of A.B., supra,* 214 *N.J.Super.* at 566, 520 *A.*2d 783

(arguing that the dominant reasons for waiver are the serious crimes with which the juvenile has been charged and the strong public interest in general and specific deterrence of those crimes). As the Court has noted, deterrence is one of the important factors to be considered in the punishment of offenders, for "[o]ne of the objectives in treating convicted offenders is to fashion a sentence that will serve to prevent future crime by him as well as by others through its deterrent impact." *State in the Interest of C.A.H. & B.A.R., supra,* 89 *N.J.* at 334, 446 *A.*2d 93. Moreover, for juveniles who have committed serious offenses, the range of discretion for courts to balance deterrence and rehabilitation is greatly reduced. *See State v. R.G.D., supra,* 108 *N.J.* at 12, 527 *A.*2d 834 (noting that evolution of referral statute evinces conscious shift in creating stronger presumption in favor of waiver and in placing a much heavier burden on the serious offender); *State in the Interest of B.G., supra,* 247 *N.J.Super.* at 423, 589 *A.*2d 637 (affirming trial court which concluded that despite finding that juvenile had been rehabilitated, "since the law also contemplates the need to weigh rehabilitation against the reasons for waiver (*i.e.,* deterrence), and since [juvenile] was a central figure in a serious offense committed two months short of his eighteenth birthday, the public interest demanded waiver.").

Dr. Dyer expressed the opinion that defendant would be better served by providing appropriate treatment through the juvenile system. "The adult penal system would [ ] simply ... continue the cycle ... [H]e might get some form of counseling ... [and] medication ... and then he would simply be paroled, dumped back on the community and he would be left to his own." Dr. Dyer thus concluded that defendant's needs would be better served in the juvenile system where the court could ensure the imposition of an "adequate discharge plan." However, despite his conclusion that defendant could be rehabilitated, Dr. Dyer admitted that defendant's condition is severe, that defendant's prognosis is poor, that treatment of schizophrenia takes many years and is contingent upon finding the correct drugs and continued post-care

treatment. Most important, Dr. Dyer could not conclude that defendant would not act in an anti-social manner in the future.

The trial court determined that the reasons for waiver outweighed any potential for rehabilitation and that waiver was proper. It specifically considered the brazen and violent nature of defendant's current crimes, the presumption of waiver, the need to protect the public, defendant's past record, and the failure of the defense to establish that medication would "solve defendant's psychotic problems."

We conclude that there was adequate evidence to support the trial court's determination that the reasons for waiver outweighed any probability of rehabilitation.

### IV

The judgment of the Appellate Division is affirmed.

*For affirmance* —Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*For reversal* —None.