290 N.J. Super. 578 (1996)
676 A.2d 560
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
AQUIL HAKIM ONQUE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1996.
Decided May 13, 1996.
*580 Before Judges PRESSLER, KEEFE and WEFING.
Sharon A. Quinn argued the cause for appellant (Harvey S. Grossman, attorney).
Lisa Sarnoff Gochman, Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney for respondent).
The opinion of the court was delivered by KEEFE, J.A.D.
Defendant Aquil Onque appeals from a Family Part judgment waiving jurisdiction over him and referring the matter against him to the Law Division, Criminal Part, for disposition. On appeal, defendant contends that the Family Court judge abused his discretion in ordering the waiver. The State contends that defendant's appeal is untimely in that he failed to appeal the waiver judgment until the Law Division matter was terminated by the entry of a guilty plea to a reduced charge of aggravated manslaughter. We elect not to address the issue of the timeliness of *581 the appeal inasmuch as we hold that the Family Court judge did not abuse his discretion in ordering waiver to the Law Division.
On December 17, 1992, Jose Sime, twenty-six years old, married, and the father of two children, was killed by one gun shot wound to the head. The homicide took place during the course of an armed robbery of a neighborhood grocery store in Newark. Sime was the cousin of the store owner and happened to be visiting the store at the time of the robbery. He was shot when he attempted to run out of the store after one of the robbers, later identified as defendant, pulled a gun as he entered the store.
Defendant was observed running from the scene with a gun in his hand. A foot chase ensued during which defendant discarded the gun. He was eventually caught and was returned to the scene where he was identified as the shooter. Defendant blurted out that he shot Sime. Defendant's two accomplices were also apprehended.
After his arrest and the administration of Miranda warnings, defendant gave a statement to the police in the presence of his grandmother. In that statement, he said that his two accomplices asked him if he wanted to go with them to rob a store. After initially declining the invitation, he acceded to their request and changed his clothing. (It was later revealed that he changed into dark, nondescript clothing to avoid detection and identification.) One of the instigators, co-defendant Jamal Westry, had a gun. Defendant asked Westry whether "he ha[d] done this before." Westry said that he had and asked who was going to hold the gun. Defendant said: "I'll hold it." Defendant then described the events that followed:
We all entered the store together[.] [Westry] went behind the counter to the cash register[.] I stood by the cookies about 10 feet from the door[.] I seen one of the guys with the gray hair, go into a like cabinet and he took out a black object[.] [I]t looked like a gun. The guy that got shot was standing in front of him[.] [W]hen I seen the gun I then started to move over towards the door[.] I turned to look for the door and I seen the guy coming towards me[.] [H]e looked like he was grabbing for the gun or me[.] I then out of fright fired one shot.
*582 Defendant was born on August 13, 1975. Because he was still a juvenile at the time of the offense he was charged with an act of delinquency under N.J.S.A. 2A:4A-23 which, if committed by an adult, would constitute murder in violation of N.J.S.A. 2C:11-3. In view of the defendant's age, the evidence against him, and the nature of the offense, the State moved to have the Family Part waive jurisdiction over the defendant pursuant to N.J.S.A. 2A:4A-26.
A hearing was conducted by Judge Conrad Koch in which he found that there was probable cause to believe that defendant committed the offense with which he was charged. Thereafter, the judge conducted a waiver hearing over a period of four days during which extensive testimony was taken from psychologists, family members, coaches, school officials and acquaintances on the issue of defendant's rehabilitative capability. At the conclusion of the hearing, Judge Koch determined that defendant was "capable of being rehabilitated by the age of nineteen." He found that the evidence on that issue was so strong that his "decision was not overly difficult to make." Defendant was by that time less than one month from his eighteenth birthday.
However, as to the second prong of the statutory test, the judge found that the defendant had not carried his burden of proving that the probability of rehabilitation substantially outweighed the reasons for waiver. See N.J.S.A. 2A:4A-26a. Noting that the main reason for waiver is deterrence, the judge acknowledged that he had to engage in a "balancing test" to weigh the "benefit of being treated as a juvenile against the deterrent factor of waiving a juvenile to the adult court." Judge Koch considered the positive and negative considerations relative to waiver set forth by the Supreme Court in State in the Interest of C.A.H. & B.A.R., 89 N.J. 326, 446 A.2d 93 (1982). He also considered the Supreme Court's statements on the subject of deterrence, and the impact of the 1982 legislative amendment to N.J.S.A. 2A:4A-26, as set forth in State v. R.G.D., 108 N.J. 1, 527 A.2d 834 (1987). Having done *583 so, Judge Koch made the following findings which are the essence of his decision to waive jurisdiction over defendant.
Aquil Onque is charged with the most serious offense; murder.
Further, Mr. Onque committed the crime during the course of a robbery while armed with a handgun. This is the type of crime which requires the utmost consideration on deterrence as it is all too common.
As such, the balance is struck far in the favor of waiver as it can go, at least the way this Court looks at it. Only the most compelling reason will meet the juvenile's burden that the probability of rehabilitation substantially outweighs the reason for the waiver.
* * * * * * * *
The Court looks at the following negative factors: the commission of a grave offense, armed robbery and possibly felony murder, perhaps the most obvious and potent factor in favor of a waiver; the fact that Mr. Onque did the shooting, his personal involvement was primary and deadly; the fact that Mr. Onque was 17 years and 4 months old when the crime took place; the glaring need for the general deterrence to any crime involving a handgun, particularly when a death occurs; the disparity between the sentence of the crime had it been committed by an 18 year old as compared to one who was sentenced as a juvenile as set forth in State versus R.G.D.
The Court also looked at the following positive factors: the lack of a prior juvenile record; the probability that Mr. Onque may be rehabilitated by age 19; the outpouring of support from the community for this young man.
The Court's primary consideration in reaching its conclusion is the need to deter others from committing crimes with guns. Testimony repeatedly showed that Aquil Onque was perhaps the most responsible, best respected student at Central High School. The consequences of his act prove that even in the hands of the most responsible person, a gun is extremely dangerous. By waiving Mr. Onque, the deterrent message to others is that taking a gun in your hand, no matter how clearly it is out of character, will lead to the most serious consequences. Even if you legally (sic) possess a gun once in your life, you will be held accountable.
To those in the community who feels (sic) that this was all a terrible mistake, the Court's response is that it was a mistake that could have and should have been avoided and not been made.
Further, as stated, the Court is aware of the potential period of incarceration if Aquil Onque is convicted as an adult and that it far exceeds that which he would face if convicted as a juvenile.
* * * * * * * *
In this case, Mr. Onque is almost 18 years old. He was four months past his 17th birthday when charged with this offense. Thus, he is not in the nebulous man/child world described by Justice O'Hern [in State v. R.G.D., supra.].

*584 Rather, he is almost the precise age at what the Supreme Court strongly suggested waiver take place in order to assure public confidence in the system. The court concurs in that belief and it was thus  and it was thus calculated in its decision.
A trial judge's determination that waiver to the Law Division is warranted is a discretionary one which will not be disturbed unless it is shown that the discretion has been abused. In reviewing such decisions, the Supreme Court has recommended that we apply the same principles that are used to determine whether a trial court has abused its discretion in respect of sentencing. State v. R.G.D., supra, 108 N.J. at 15, 527 A.2d 834 (citing State v. Roth, 95 N.J. 334, 363-364, 471 A.2d 370 (1984)). Thus, if the trial court has applied the correct legal principles, has considered appropriate factors, and the judge's exercise of discretion did not constitute a "clear error of judgment" considering all relevant circumstances, the appellate court should not interfere. Ibid. (quoting State v. Humphreys, 89 N.J. 4, 13, 444 A.2d 569 (1982)).
"The best measure of a waiver decision will be found in the court's statement of reasons." Ibid. That is why we have quoted Judge Koch's decision at length. In our view, Judge Koch applied the correct principles, carefully weighed the relevant factors, and made findings that are supported by the record. The decision, though a difficult and close one, is entitled to our deference and should remain free of appellate "second-guessing." Ibid. Therefore, we affirm the judgment under review essentially for the reasons stated by Judge Koch, and add the following brief comments.
Although judges must never permit "public outrage" to guide our decision on a waiver hearing, see State v. R.G.D., supra, 108 N.J. at 15, 527 A.2d 834, we must be mindful of the public policy considerations that motivate the Legislature to effect changes in our law and reflect public attitudes toward crime and law enforcement. The 1982 amendments to the Code of Juvenile Justice, particularly the amendment to N.J.S.A. 2A:4A-26, L. 1982, c. 77, sec 7, effective December 31, 1983, evidenced a "sweeping *585 change in penal policy" that occurred in the 1970's with respect to adult offenders and spilled over into the juvenile sphere. As in the adult area of law enforcement, there was "[p]ublic concern about unrehabilitated juvenile offenders [which] stimulated a `just deserts' [sic] approach to juvenile crime." State v. R.G.D., supra, 108 N.J. at 7-8, 527 A.2d 834. Consequently, with respect to some very serious offenses, specifically murder, it was the Legislature's intent "to shift the process toward waiver." Id. at 9, 527 A.2d 834. Indeed, there is a presumption in favor of waiver for such crimes. Id. at 12, 527 A.2d 834.
That is not to say that balancing the interests of rehabilitation against the benefits of deterrence, as was done in C.A.H., supra, must no longer take place. Such considerations remain a part of the waiver determination. However, the legislative amendments "tilted" the "evidential axis" of that balancing equation "heavily ... in favor of waiver." State v. R.G.D., supra, 108 N.J. at 12, 527 A.2d 834.
There are two forms of deterrence: individual deterrence and general deterrence. The justification for waiver in our juvenile justice system is general deterrence, not individual deterrence. Id. at 11-12, 527 A.2d 834. That is so because individual deterrence and rehabilitation are essentially the same thing in this context. That is, a juvenile who can be rehabilitated before age nineteen need not be individually deterred beyond that date. Inasmuch as the waiver statute places the burden on the juvenile to prove that the probability of rehabilitation "substantially outweighs the reasons for waiver," N.J.S.A. 2A:4A-26, the Legislature obviously believed that general deterrence was the paramount factor to be considered in the waiver consideration. It is not for us to second-guess the Legislature's assessment of the value of general deterrence as a tool in crime prevention. See State v. Scott, 141 N.J. 457, 471, 661 A.2d 1288 (1995) (holding that the concern for deterrence is "central" to the balancing between rehabilitation and reasons for waiver).
Our Supreme Court has recognized that general deterrence is a

*586 potent factor in the treatment of persons who have committed crimes which are perceived to be avoidable or preventable. Such crimes are usually those which result from volition, deliberate and nonimpulsive behavior.
........
[S]trict punishment in such circumstances will be a vicarious penal lesson to other similarly disposed persons, who will be deterred from engaging in criminal acts.
[State in the Interest of C.A.H. & B.A.R., supra, 89 N.J. at 335, 446 A.2d 93. (citations omitted)].
The gravity of the crime, the calculated behavior of the individual and the closeness of the juvenile's age to eighteen are factors that "strongly impel a need for deterrence." Id. at 338, 446 A.2d 93.
Further, where the criminal act involved is one of "pressing public" concern it is more likely that the trial judge should give "priority to punishment as a deterrence to others and as an aid to law enforcement. Id. at 336, 446 A.2d 93 (quoting State v. Ivan, 33 N.J. 197, 202, 162 A.2d 851 (1960)). On the other hand, "[r]ehabilitation, the second goal to be served by the juvenile waiver scheme, is more appropriately reserved for cases involving `relatively minor antisocial conduct of juveniles.'" Id. at 337, n. 2, 446 A.2d 93 (quoting the Statement accompanying L. 1973, c. 306, sec 7 (N.J.S.A. 2A:4-48)). Thus, "for juveniles who have committed serious offenses, the range of discretion for courts to balance deterrence and rehabilitation is greatly reduced." State v. Scott, supra, 141 N.J. at 472, 661 A.2d 1288.
Applying the foregoing principles to this case, Judge Koch's decision is clearly supportable. Regardless of the fact that defendant's conduct in this case was apparently out of character, we cannot overlook the fact that he voluntarily agreed to participate in the robbery, changed into different clothes for that purpose, knew that a weapon was going to be used to coerce cooperation from the intended victim, and volunteered to hold the gun for that purpose. His statement to the effect that he pulled the trigger out of "fright" because he thought a gun was being pulled by a man in the store and that he was being rushed by Sime was self-serving. The police investigation did not disclose the presence of *587 another gun, and the statements taken of the people in the store reflect that Sime was simply trying to get out of harm's way.
The statement may truly reflect defendant's state of mind and his reaction may truly have been one of panic, but our felony murder statute expresses society's long-held belief that an armed defendant's intention not to cause harm is irrelevant where a murder is committed in the course of a robbery. See State v. Darby, 200 N.J. Super. 327, 491 A.2d 733 (App.Div. 1984), certif. denied, 101 N.J. 226, 501 A.2d 905 (1985) (holding essentially that there is no specific culpability requirement for the homicide; the actor need only have met the culpability requirement of the underlying felony). While the actual pull of the trigger may have lacked a cognitive impetus, defendant's participation in the armed robbery certainly had all the earmarks of purposeful participation in a criminal act fraught with a high degree of danger. Further, it cannot be said that defendant's age or level of intelligence deprived him of the ability to fully appreciate the consequences of his conduct. Defendant was only eight months from his eighteenth birthday. Had this crime been committed eight months later, the law would have required that he serve a minimum prison term of thirty years, N.J.S.A. 2C:11-3b, and the analysis we are undertaking would be irrelevant. It is difficult to justify treating a person of defendant's age and level of participation as a juvenile offender, regardless of his rehabilitative potential, without totally dismissing the legislative requirement that the waiver determination reflect the importance of general deterrence. As the Supreme Court observed in State v. R.G.D., supra,
Obviously, a 17 1/2-year-old juvenile who commits murder, assuming he could demonstrate the probability of rehabilitation by the time he reaches age 19, would appear to receive a disproportionate sentence if the maximum exposure were twenty years with the possibility of parole in five years when contrasted with the thirty years of imprisonment without parole for one who is only six months older. On the other hand, the case of a juvenile barely over the age of fourteen years, in that nebulous man-child world, will cause us to ponder what is the proper balance of values.
[108 N.J. at 14, n. 6, 527 A.2d 834].
Lastly, although it is only Judge Koch's decision that is before us for review, it is worth noting that the criminal justice system *588 appropriately responded to the special circumstances of this case. It is clear to us that defendant's potential for rehabilitation influenced the State to accept defendant's plea to the downgraded charge of aggravated manslaughter, inasmuch as defendant's guilt of felony murder was quite apparent. Further, Judge Thomas Brown, who accepted defendant's plea in the Law Division, gave additional consideration to defendant's rehabilitative potential by imposing a twelve year minimum term, rather than the fifteen year minimum term negotiated in the plea bargain and requested by the State. Under the circumstances, the interests of justice were adequately served in the context of rehabilitation and general deterrence.
The judgment under review is affirmed.