848 A.2d 907

STATE OF NEW JERSEY, IN THE INTEREST
OF D.D., A JUVENILE.

*Superior Court of New Jersey*
*Chancery Division Family Part*

Decided October 6, 2003.

---

*David Deitz*, Assistant County Prosecutor for the State of New Jersey (*Vincent P. Sarubbi*, Camden County Prosecutor, of Counsel).

*Frank Wilson* for the juvenile.

DICAMILLO, J.T.C. (temporarily assigned).

In this case of first impression, the State seeks to waive a fifteen-year-old juvenile with learning disabilities to the Law Division. The waiver issue for determination is how to balance the rehabilitation potential of a learning disabled child against the reasons for treating him as an adult. A recent report from the American Bar Association Juvenile Justice Center reported that 30–50% of children involved in juvenile courts are learning disabled, as compared to 4.5% in the general population. *Understanding Adolescents: A Juvenile Court Training Curriculum* (ABA Juvenile Justice Center, Wash., D.C.), Sept. 2000, at 10.

D.D. and his seventeen-year-old co-defendant, T.C., entered the victim's home and demanded money. The victim stated he did not have any money, handed over a cell phone, and T.C. ordered D.D. to shoot the victim. D.D. allegedly pulled the trigger, but for reasons not known the gun did not discharge. T.C. told D.D. a second time to shoot the victim, and again nothing happened. T.C. then grabbed the gun, shot the victim in the neck, and the juveniles fled the house.

D.D. was charged with attempted murder (first degree), robbery (first degree), aggravated assault (second degree), unlawful possession of weapons (third degree), and unlawful possession of weapons for an unlawful purpose (second degree).

The Camden County Prosecutor's office filed a motion to waive D.D. to the Law Division and remove jurisdiction from the family court under *N.J.S.A.* 2A:4A–26(a). D.D. seeks jurisdiction be retained in the family court arguing that the probability of rehabilitation substantially outweighs the reasons for waiver. *N.J.S.A.* 2A:4A–26(e); *R.* 5:22–2(b)(1). At an earlier hearing, probable cause was established that D.D. committed first-degree offenses, leaving the balancing issue for resolution. The burden is an D.D. to show the probability of his rehabilitation with available services prior to the age of nineteen. *N.J.S.A.* 2A:4A–26(e). D.D. must show the probability of his rehabilitation substantially outweighs the reasons for his waiver. *Ibid.*

D.D. is the oldest of his parents three biological children. He has five half-siblings who reside with his father in Salem, New Jersey. Both parents raised D.D. until the age of seven, when they separated and his mother became homeless. D.D., his mother, and his two siblings moved to his maternal grandmother's home in Logan Township, New Jersey. During the summer of 2002, D.D. began living with his father in Salem, New Jersey. His father was incarcerated in January 2003, and D.D. continued living in Salem with his father's girlfriend. When D.D. became uncooperative and refused to abide by her rules, his family decided to move him to his aunt's home in Camden, New Jersey. Within one month of D.D.'s move to Camden, the present incident occurred.

After he was classified as having multiple learning disabilities in 1997, D.D. began special education classes. He was diagnosed with attention deficit hyperactivity disorder (AD/HD) and oppositional defiant disorder, placed on medication, and he began an individualized educational program. An educational assessment in May 2000 found that D.D. had reading skills at a first grade level, mathematic and language skills at a third grade level, and writing skills at a kindergarten level. The school psychologist described D.D. as functioning within the range of mild mental retardation based on his verbal IQ of 73, his performance IQ of 69, and his full scale IQ of 69.[1] D.D. began a twelve-month, low-intensity program at Health Care Commons, a mental health facility in Salem, New Jersey. He met with a psychiatrist who placed him on Ritalin and later Prozac. D.D. was not discharged from treatment, but he discontinued the program.

At the waiver hearing, the defense presented Dr. David F. Bogacki, Ph.D., A.B.P.P., a licensed forensic psychologist, as its primary witness. The court accepted Bogacki as an expert who had extensive clinical experience with adolescents. Bogacki found with "reasonable psychological certainty," that D.D. could be

[1] According to Bogacki, an IQ of 69 or below generally places the person in the mentally deficient or mentally retarded range.

rehabilitated prior to age nineteen with the resources available to the court. Bogacki's opinion was based on his August 11, 2003 evaluation of D.D., a review of materials, a mental status examination, clinical data derived from past and recent psychological tests, and interviews with D.D.'s family members and the treatment staff at the juvenile detention center. The State did not present an expert or any testimony refuting Bogacki's conclusions. The court finds Bogacki's testimony most credible.

Bogacki diagnosed D.D. as having oppositional defiant disorder, AD/HD, and adjustment disorder with depressed mood. Bogacki found that D.D. had a full-scale IQ of 54, lower than the school psychologist's finding of an IQ of 69. The doctor explained that a diagnosis of mental retardation requires both an IQ score and a good assessment of how a person functions in a social, not academic, environment. Bogacki concluded that his evaluation was not sufficient to assess how D.D. adapted to a social environment.

This is D.D.'s first offense, except for a fight on a school bus when he was twelve years old, which was resolved with a deferred disposition and dismissed on October 3, 2002. D.D. attended a one-day anger management seminar at the Tender Loving Care program. D.D. stopped taking his prescribed Ritalin when he was twelve. He used marijuana once or twice per day from the age of thirteen until his present detention, but he has never participated in any drug treatment program.

As part of a rehabilitation program, Bogacki stated D.D. would need drug counseling and marijuana abuse education to learn how its use impairs judgment and reasoning. Smoking marijuana increased D.D.'s poor judgment, making him more susceptible to negative influences. D.D. should also receive continued medication to treat his depression and AD/HD, coupled with special education to provide basic academic skills and vocational training.

To prove the probability of rehabilitation, an expert provides testimony regarding factors that affect amenability to

treatment, including age, offense record, family and educational background, and personality of the juvenile. *State v. Scott,* 141 *N.J.* 457, 464, 661 *A.2d* 1288 (1995). The testimony must show whether there is sufficient time for the juvenile to be rehabilitated before age nineteen, the specific programs the juvenile needs, and whether such programs are available to the court. *Ibid.* If there is not enough time to rehabilitate the juvenile, or if no specific rehabilitation plan is provided, then a court may find that no probability of rehabilitation exists. *Ibid.* (citing *State in the Interest of A.L.,* 271 *N.J.Super.* 192, 213, 638 *A.2d* 814 (App.Div. 1994)).

█ A waiver determination should be left undisturbed if the findings of fact are supported by credible evidence and the correct statutory standards are applied, unless there is a clear error of judgment by the family court. *State v. R.G.D.,* 108 *N.J.* 1, 15, 527 *A.2d* 834 (1987).[2] Family court decisions denying waiver have been reversed when the offense was murder and the court failed to consider the gravity of the crime.[3]

In *State in the Interest of C.A.H.,* 89 *N.J.* 326, 446 *A.2d* 93 (1982), the Supreme Court established a balancing approach to be used in waiver determinations. The Court reversed a family court decision to retain jurisdiction over two juveniles charged with homicide and robbery, who were sixteen and seventeen at the time of the offenses. *Id.* at 345–46, 446 *A.2d* 93. That family court had

[2] *See also State v. Scott, supra,* 141 *N.J.* 457, 661 *A.2d* 1288; *State in the Interest of A.B.,* 109 *N.J.* 195, 536 *A.2d* 240 (1988); *State v. R.G.D., supra,* 108 *N.J.* 1, 527 *A.2d* 834; *State v. Torres,* 313 *N.J.Super.* 129, 713 *A.2d* 1 (App.Div. 1998); *State v. Sexton,* 311 *N.J.Super.* 70, 709 *A.2d* 288 (App.Div.1998); *State v. Bessix,* 309 *N.J.Super.* 126, 706 *A.2d* 799 (App.Div.1998); *State v. Matarama,* 306 *N.J.Super.* 6, 703 *A.2d* 278 (App.Div.1997); *State v. Onque,* 290 *N.J.Super.* 578, 676 *A.2d* 560 (App.Div.1996); *State in the Interest of A.L., supra,* 271 *N.J.Super.* 192, 638 *A.2d* 814; *State in the Interest of A.J.,* 232 *N.J.Super.* 274, 556 *A.2d* 1283 (App.Div.1989).

[3] *See, e.g., State in the Interest of C.A.H.,* 89 *N.J.* 326, 446 *A.2d* 93 (1982); *State in the Interest of S.M.,* 211 *N.J.Super.* 675, 512 *A.2d* 570 (App.Div.1986); *State in the Interest of J.F.,* 141 *N.J.Super.* 328, 358 *A.2d* 217 (App.Div.1976).

failed to properly balance the goals of protecting society and the need for rehabilitation. *Ibid.* There was no evidence or testimony addressing the specific rehabilitation prospects for the juveniles. *Id.* at 341–43, 446 *A.*2d 93.

*N.J.S.A.* 2A:4–4, the earlier statute, provided four factors applicable to waiver determinations: (1) the age of the juvenile; (2) the kind of crime alleged; (3) the protection of the public; and (4) the prospects for rehabilitation. *State in the Interest of C.A.H., supra,* 89 *N.J.* at 333, 446 *A.*2d 93 (citing *State v. Lueder,* 74 *N.J.* 62, 376 *A.*2d 1169 (1977)). Adequate protection of the public as required by statute included the goals of deterrence and punishment. *Id.* at 332, 446 *A.*2d 93. Although the juvenile system puts greater emphasis on rehabilitation than the criminal system, the principles relating to deterrence have "pertinency in the administration of juvenile justice." *Ibid.* As mitigating factors, courts consider whether the offender (1) caused serious harm, (2) contemplated the conduct would cause serious harm, (3) is likely to commit another offense, and (4) was influenced by someone more mature. *Id.* at 335, 446 *A.*2d 93. Those factors have a bearing both on whether the offender is a source of future danger and on the "relative necessity of a strong sanction for deterrence purpose." *Ibid.*

In *State in the Interest of C.A.H.,* the Court was aware of a proposed statute, presently *N.J.S.A.* 2A:4A–26, explicitly requiring a balancing of factors related to probability of rehabilitation and reasons for waiver. The proposed legislation placed a higher burden on the juvenile seeking to remain under a family court's jurisdiction, and included an implicit reference to deterrence and punishment as factors related to public safety. *Id.* at 345, 446 *A.*2d 93. The Court found the controlling statute included the goals of punishment and deterrence to ensure the "interests of the public." *Ibid.*

In 1995, the Supreme Court revisited the juvenile waiver issue as it related to a juvenile with a mental disability. *State v. Scott, supra,* 141 *N.J.* 457, 661 *A.*2d 1288. The Court applied the

balancing test established by *State in the Interest of C.A.H.*, stating that the statute requires "a balancing of 'the need for deterrence against the prospects of rehabilitation.'" *Id.* at 464, 661 *A.*2d 1288 (quoting *State in the Interest of C.A.H.*, *supra*, 89 *N.J.* at 344, 446 *A.*2d 93). The primary issue in *State v. Scott*, was how a juvenile's diagnosis of schizophrenia affected his chances for rehabilitation. *Id.* at 465–66, 661 *A.*2d 1288.

The Court held that a family court must focus on how the condition impacts the juvenile's ability to be rehabilitated, asking how the mental illness effects the "juvenile's conduct and behavior." *Id.* at 465, 661 *A.*2d 1288. In its holding, the Court concluded that a mental illness, while making a juvenile "less amenable to rehabilitation," does not "constitute a bar to a determination of potential for rehabilitation." *Id.* at 466, 661 *A.*2d 1288 (citing *J.A.L. v. State*, 162 *Wis.*2d 940, 471 *N.W.*2d 493 (1991)). The mental illness must be analyzed within the context of all the factors used to determine the probability of rehabilitation. *Ibid.* The court must look at the treatment of the mental condition to determine the impact of the illness on prospects for rehabilitation. *Ibid.* The Court held that determination should be based on the following six factors:

(1) the period of time available for treatment;

(2) the projected period of time required for improvement or remission to be achieved;

(3) the basis for that projection, including the severity of the illness;

(4) the difficulty involved in identifying the appropriate treatment or medication;

(5) the response of the juvenile to prior treatment or medication, if any; and,

(6) the success rate of the proposed program for achieving and maintaining remission.

*Ibid.*[4]

In this case, the juvenile has learning disabilities, but not a severe mental illness as in *State v. Scott.* The cases are similar in

---

[4] Although the Supreme Court did not conclude that a juvenile with a mental illness could not be rehabilitated, and thereby automatically waived to Law Division, the Court stated that rehabilitation for a juvenile with a mental illness

that both types of disorders have an impact on rehabilitative potential. The principles established by *State v. Scott* apply to this case, and the court must now consider how D.D.'s learning disabilities affect the probability of his rehabilitation based on the six factors.

This court finds that D.D.'s learning disabilities will have little effect on his rehabilitation potential. First, considering the availability of time, the thirty-four months D.D. has to be rehabilitated works in his favor and diminishes the negative effect his learning disabilities may have on his rehabilitation. Second, according to Bogacki's report, the learning disabilities are readily treatable with medication and therapy. The report found sufficient time exists for D.D.'s treatment.

The fifth factor requires consideration of the juvenile's response to past treatment to determine the effect the "illness" will have on his rehabilitation. In the past from the ages of nine to twelve, D.D. responded well to his medication, and he did well in school while on medication. Bogacki found that D.D.'s past problems with treatment were caused by a lack of parental supervision and a social network. Bogacki testified that D.D. would most likely take his medicine within a structured environment such as Jamesburg. Based on the above factors, this court finds that D.D.'s learning disabilities will minimally affect his rehabilitative potential. As to the sixth factor, neither side provided any evidence relating to the success rate of the proposed program.

D.D.'s general rehabilitative potential is determined by analyzing certain factors used in the psychological field to determine a person's risk of committing future offenses and rehabilitation potential. The major risk factors include:

---

is less probable. *State v. Scott, supra,* 141 *N.J.* at 465–66, 661 *A.*2d 1288. With a lower chance for rehabilitation, the Court acknowledged that those juveniles are more likely to be waived. This case does not present an equal protection issue because this court finds that despite the learning disabilities of the juvenile, the probability of his rehabilitation substantially outweighs the reasons for waiver.

(1) prior offenses/delinquent behavior,

(2) substance abuse,

(3) leisure/recreation,

(4) personality functioning,

(5) attitudes orientation,

(6) educational and employment history, and

(7) family relationships.

These factors inform a psychologist regarding which areas of the juvenile's life and personality must be treated in order to rehabilitate him. A determination of the potential for rehabilitation primarily is based on the evaluation of the juvenile regarding the crime at issue, past and present mental status examinations, clinical data derived from the administration and interpretation of psychological tests, and interviews with family, social workers, school personnel, and others who are familiar with the juvenile's history. The court must distinguish between the probability of rehabilitation and the important areas of treatment identified by a psychologist. This court has considered each factor as it relates to D.D.'s rehabilitative potential.

## (1) *Previous Offense/Delinquent Behavior*

The purpose of considering past delinquent behavior is to determine whether the juvenile will be at a higher risk for repeating delinquent behavior based on past conduct. Early contact with the criminal justice system is a risk factor to rehabilitation. That risk factor does not apply here because D.D. does not have previous contact with the criminal justice system. As noted by Bogacki, the crime presently alleged was directly related to D.D.'s association with an older peer rather than one of many prior delinquent acts.

## (2) *Substance Abuse*

Drug or substance abuse is a factor creating a higher risk for future offenses, and may affect rehabilitation potential. Bogacki noted, that substance abuse was a significant risk for D.D. D.D.'s daily use of marijuana since the age of thirteen, in combination with D.D.'s mental deficiencies, are likely causes of his poor

judgment, and likely related to the alleged offense. Bogacki testified that marijuana abuse was the easiest form of substance abuse to treat because it did not involve a physical addiction. D.D. has a better chance at success in a drug rehabilitation program because he does not have any past failures in drug treatment, and at the time of his hearing had not been using marijuana for three months. Bogacki acknowledged that one reasonable hypothesis regarding D.D.'s use of marijuana is that he began to self-medicate when he discontinued his AD/HD medication Bogacki testified that many adolescents who suffer from untreated disorders like AD/HD may feel "revved up" and use marijuana as a sedative to help calm them down. Once the juvenile's AD/HD is treated, the motivation to use marijuana may be resolved as well.

### (3) *Leisure/Recreation*

How a juvenile spends his leisure time may pose a risk for future delinquency if it is unproductive or involves gang-related activity. D.D. is not involved with any group activities and primarily spends his leisure time alone. He has not been involved with any gang-related activities. This factor tends to be neutral to D.D.'s rehabilitative analysis.

### (4) *Personality Functioning*

A juvenile's personality may pose a risk factor if the juvenile inflated self-esteem, is physically or verbally aggressive, has a short attention span, low frustration tolerance, or is exploitative. Bogacki found D.D. to be a very introverted teenager who showed clear signs of "depressive affect," by being preoccupied with feelings of discouragement, guilt, a lack of initiative, apathy, low self-esteem, and self-depreciation. Those aspects of his personality do not signal risks, nor does D.D. suffer from an egocentric personality or feelings of entitlement. Instead, D.D. has a tendency to follow others, a short attention span, low tolerance for frustration, and he is easily influenced by others. Those are areas that need to be rehabilitated.

### (5) *Attitude/Orientation*

Open deviance to authority, antisocial or pro-criminal attitudes, and callousness towards others make a juvenile at risk for future offenses. Such attitudes would decrease the likelihood of rehabilitation because along with such attitudes comes an unwillingness to be helped. Bogacki found that D.D. did not display any conscious antisocial attitudes. The recent problems with his family, and not obeying home rules, resulted more from a lack of supervision than an innate proclivity towards criminal behavior. Attitude and orientation are not risk factors to D.D.'s rehabilitation prospects.

### (6) *Education/Vocation*

A juvenile may be at risk for future offenses when there is a history of serious behavioral problems at home or in school. Bogacki considered this factor "a relative deficit" for the juvenile. D.D.'s behavioral problems began in middle school when he stopped his Ritalin, and according to the Bogacki, mostly stemmed from D.D.'s lacking a social network. The fact that D.D. had minimal behavioral problems when he took his medication supports the conclusion that his learning disabilities do not pose any meaningful barrier to his rehabilitation. The issue of how his learning disabilities affect his rehabilitation potential is analyzed above.

### (7) *Family and Relationships*

The family relationships in D.D.'s life serve as both positive and negative factors. His mother, father and grandmother are supportive and concerned about D.D.'s future. Their failure to provide a stable environment, however, led to him moving to an unfamiliar environment without social support.

Based on the seven factors, Bogacki concluded D.D. could be rehabilitated within available state programs before the age of nineteen. Bogacki's testimony is convincing, reasonable, and thorough. Based on that testimony, the court's experience, and the testimony of the juvenile and his family, strong weight is given to the probability of D.D.'s rehabilitation.

 The court must now determine whether the probability of D.D.'s rehabilitation substantially outweighs the reasons for waiver. *N.J.S.A.* 2A:4A–26(e). The primary reason for waiver is the need for general deterrence. *State v. Onque, supra,* 290 *N.J.Super.* at 585–86, 676 *A.*2d 560. Specific deterrence should not be considered at this stage of the analysis. *Id.* at 585, 676 *A.*2d 560. Once it is found that a juvenile can be rehabilitated before the age of nineteen, the issue of individual or specific deterrence is moot. *Ibid. N.J.S.A.* 2A:4A–26 revised the prior waiver statute by placing the burden on the juvenile in waiver hearings and thereby separated the inquiries of specific and general deterrence. *State v. Onque, supra,* 290 *N.J.Super.* at 585, 676 *A.*2d 560. Specific deterrence became one of several factors to consider when determining a juvenile's rehabilitative potential. The issue of general deterrence became essential to balancing probability of rehabilitation against the reasons for waiver. *Ibid.* (citing *State v. Scott, supra,* 141 *N.J.* at 471, 661 *A.*2d 1288).

 In determining whether general deterrence is needed, consideration must be given to the gravity of the crime, the age of the juvenile, and the disparity between the potential sentence as an adult and the potential disposition as a juvenile offender. *Id.* at 584, 676 *A.*2d 560. *See also State in the Interest of C.A.H., supra,* 89 *N.J.* at 341–43, 446 *A.*2d 93. Murder and other serious offenses are the types of crimes for which the Legislature intended waiver to apply, creating a strong need for deterrence in those cases.[5] Although those crimes more likely result in waiving the juvenile, decision to waive to the Law Division must not be based solely on the type of crime committed. *State v. Loray,* 46 *N.J.* 179, 190–91, 215 *A.*2d 539 (1965). *See also State in the Interest of J.F., supra,* 141 *N.J.Super.* at 333, 358 *A.*2d 217. In determining

---

[5] *State in the Interest of A.B., supra,* 109 *N.J.* 195, 536 A.2d 240; *State in the Interest of C.A.H., supra,* 89 *N.J.* 326, 446 A.2d 93; *State v. Torres, supra,* 313 *N.J.Super.* 129, 713 A.2d 1; *State in the Interest of S.M., supra,* 211 *N.J.Super.* 675, 512 A.2d 570; *State in Interest of J.F., supra,* 141 *N.J.Super.* 328, 358 A.2d 217.

the serious nature of a crime when weighing the reasons for waiver, the court must not "place[ ] on the scale the very elements that made the offense a first-degree Chart 1 waiver case." *State v. R.G.D., supra,* 108 *N.J.* at 17, 527 *A.*2d 834. Pursuant to *N.J.S.A.* 2A:4A–26(a), additional weight is automatically given to first-degree offenses. Placing additional emphasis on those elements of an offense defining it a first-degree offense would give the crime more weight than intended by the Legislature.

The need for deterrence must be given greater weight the closer a juvenile is to age eighteen at the time of the alleged crime. *State v. Onque, supra,* 290 *N.J.Super.* at 584, 676 *A.*2d 560. In *State v. Onque,* the Appellate Division noted that it is necessary to waive older juveniles in order to instill public confidence in our criminal justice system. *Ibid.* A court may find that a juvenile, a few months shy of age eighteen, who was the central figure in a serious crime, should be waived despite the finding that the juvenile could be rehabilitated. *State v. Scott, supra,* 141 *N.J.* at 472, 661 *A.*2d 1288 (citing *State in the Interest of B.G.,* 247 *N.J.Super.* 403, 423, 589 *A.*2d 637 (App.Div.1991)).

Consideration must be given to the disparity between the potential sentencing for a juvenile compared to that of an adult, to secure the public's confidence in the system. *State v. R.G.D., supra,* 108 *N.J.* at 13–14, 527 *A.*2d 834, *See also State v. Onque, supra,* 290 *N.J.Super.* at 587, 676 *A.*2d 560. In *State v. R.G.D., supra,* 108 *N.J.* at 13–14, 527 *A.*2d 834, the Court noted:

A publicly articulated disposition, conscious of the necessity of informing the public that the period of incarceration ordered through the juvenile justice system will not be disproportionate to that expected in the adult court, may help effectuate the goal of assuring public confidence by imposing a proportionate sanction while also invoking the rehabilitative services available to the juvenile court.

After considering those factors and the need for deterrence, the reasons for waiver are substantially outweighed by the probability of rehabilitation. Thus, the State's motion for involuntary waiver is denied. While general deterrence is needed because the case involves robbery and attempted murder, both first-degree offenses, the limits of D.D.'s participation and his hesi-

tation and inability to fire the gun suggest he was not a willing participant. There was no evidence showing that the robbery was planned or premeditated. The waiver statute instructs the court to balance relevant factors to determine waiver, and not decide solely based on the type of crime. *N.J.S.A.* 2A:4A–26(e). Considering the relevant factors surrounding the alleged crimes, including the mitigating factors discussed above, there is a lack of substantial reasons for waiver.

D.D. was born on August 20, 1987, and he was fifteen years and two months of age at the time of the alleged crimes. His age does not create a greater need for deterrence. His young age and the substantial influence of the older juvenile mitigate the reasons for waiver to assure the public that our criminal justice system is fair and just. Difference in potential sentencing is significant because a juvenile could receive a maximum detention of four years, while an adult could receive up to twenty years in prison. *N.J.S.A.* 2C:43–7. The court gives this disparity serious consideration.

The reasons for waiving D.D. are given moderate weight based on the relevant factors. D.D. is not within the age group of juveniles targeted by the waiver statute. The crimes, while serious, were not calculated, premeditated, or of an especially heinous nature. D.D. was not the central figure in the crimes and he was influenced by an older juvenile with a mental age six years greater than his. The large disparity of potential sentencing places some weight towards the need for general deterrence. Thus, reasons for waiver are given moderate weight. Balancing all relevant factors, the probability of D.D.'s rehabilitation substantially outweighs the reasons for waiver. Having met his burden, D.D. shall remain under the jurisdiction of this court.

D.D. has admitted to the charges of armed robbery and aggravated assault and is given a disposition of four years at the Training School for Boys at Jamesburg.