# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3221-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

J.Y.D.,

    Defendant-Appellant.

_____

        Argued October 2, 2017 — Decided November 9, 2017

        Before Judges Ostrer and Whipple.

        On appeal from Superior Court of New Jersey,
        Law Division, Atlantic County, Indictment No.
        12-05-1124.

        Rebecca Gindi, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender, attorney;
        Susan Brody, Deputy Public Defender, of
        counsel and on the briefs; Ms. Gindi, on the
        briefs).

        Melinda A. Harrigan, Assistant Prosecutor,
        argued the cause for respondent (Damon G.
        Tyner, Atlantic County Prosecutor, attorney;
        Ms. Harrigan, of counsel and on the brief).

PER CURIAM

Defendant, J.Y.D. (defendant), appeals from his November 14, 2014 judgment of conviction after pleading guilty to first-degree robbery, N.J.S.A. 2C:15-1, and second-degree sexual assault, N.J.S.A. 2C:14-2(c)(1). Defendant argues the family part judge's decision to waive him into adult court was error because the likelihood for rehabilitation outweighed the reasons for the waiver. He further argues his sentence must be vacated as the trial court did not apply the guidelines set forth in State v. Yarbough, 100 N.J. 627 (1985), cert. denied, 475 U.S. 1014, 106 S. Ct. 1193, 89 L. Ed. 2d 308 (1986), failed to account for defendant's age and attendant circumstances, and failed to properly weigh the aggravating and mitigating factors. We affirm.

We discern the following facts from the record. On June 9, 2010, the victim, a twenty-four year old mother, was returning from work and driving home to Atlantic City. While stopped at a red light, defendant, age fifteen, and an accomplice, R.J., jumped into her car. Defendant entered through the rear passenger door, and R.J. entered through the rear driver's side door and pointed a gun at her saying, "[i]f you want to live you'll do as I say."

After defendant instructed the victim to move the car to a more discreet location, R.J. demanded money, but she did not have any. She offered her bank card, cell phone, and eventually, her car. R.J. declined the car.

Defendant instructed the victim to again move the car, and asked her if she was going to call the police. Once they were in a darker location, R.J. handed the gun to defendant, who continued to point it at her head. R.J. wanted to "get[] something out of this[,]" and demanded the victim strip and to get on top of him. Defendant then exclaimed, "Fuck this. I'm getting something out of this, too." They forced the victim to have vaginal intercourse with R.J. and perform oral sex on defendant simultaneously. Both defendants ejaculated into her, and she spit defendant's semen onto her sweatshirt.

Defendant ordered the victim to drive them to a sub shop. While she was driving, defendant repeatedly asked her if she was going to notify the police. She responded no, and that she was going home to shower. Defendant and R.J. exited the vehicle and "clapped each other up," laughed, and walked down Mississippi Avenue towards Fairmont Avenue.

The victim immediately drove to the public safety building and entered the Detective Bureau and reported two males had raped her. An ambulance transported her to the hospital.

Police canvassed the area where the incident occurred and recovered video surveillance from a bar showing the two suspects entering the victim's car. A confidential informant helped to identify R.J. and defendant. The victim identified defendant as

the male who was who pointed the gun at her head while she performed oral sex on him and vaginal intercourse with R.J. Both were arrested.

On June 21, 2010, a juvenile delinquency complaint charged defendant with second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(A); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(B); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(B)(4); second-degree conspiracy, N.J.S.A. 2C:5-2(A)(1); first-degree carjacking, N.J.S.A. 2C:15-2(A)(2); first-degree kidnapping, N.J.S.A. 2C:13-1(B)(1); first-degree robbery, N.J.S.A. 2C:15-1(A)(2); and first-degree aggravated sexual assault, N.J.S.A. 2C:13-1(B)(1).

On July 15, 2010, the State moved to waive jurisdiction from the family part to the adult court. On October 6, 2010, the family part judge conducted a waiver hearing.

The court heard testimony from Detective Stacey Herrerias, who was present at the time the victim arrived at the public safety building and described the subsequent investigation. Following the detective's testimony, the court made the initial finding that defendant was above the age of fourteen at the time of the offense, and the acts alleged by the victim "fit the allegations or the complaints that [had] been filed." The court found the evidence and testimony proffered supported a finding that probable cause

existed as to the crimes of conspiracy, carjacking, kidnapping, robbery, and aggravated sexual assault.

Having made the initial findings, the burden shifted to defendant to show the probability of his rehabilitation prior to age nineteen and that potential rehabilitation outweighed the waiver. On November 3, 2011, defendant called Rochelle Andres, Acting Assistant Superintendent and social worker at the Harborfields Detention Center for the New Jersey Juvenile Justice Commission. Andres worked with defendant for more than 500 days at Harborfields. She noted when defendant first arrived, he was "terrible," regularly acting out and causing disruptions to the rest of the class. Andres further testified when kept away from R.J., defendant's conduct generally improved, however, there were still times he caused disruptions. Andres provided the court a letter in support of defendant.

Defendant presented Dr. Elliott L. Atkins, Ed.D., who testified defendant could be rehabilitated within the statutory timeframe by the juvenile justice system. After evaluating defendant, Dr. Atkins found him remorseful and genuine. Dr. Atkins also described defendant's chaotic family history and his history of attachment, behavioral, and attention deficit disorders, which heavily attributed to defendant's psychological struggles. Dr.

Atkins believed defendant possessed the rehabilitative nature to succeed.

The State initially retained Dr. Phillip Witt, Ph.D., but sought the services of another expert, Dr. Louis B. Schlesinger, Ph.D., after Dr. Witt opined defendant was amenable to rehabilitation. Dr. Schlesinger testified after administering his own tests and reviewing defendant's history, that it was his opinion defendant was unable to be rehabilitated within the requisite timeframe. Dr. Schlesinger noted defendant failed to accept the consequences of his actions. Furthermore, Dr. Schlesinger noted that although R.J., not defendant, was the dominant actor in the incident, defendant still participated.

On April 13, 2012, the court found, in a separate written opinion, the State met its burden to waive jurisdiction, pursuant to N.J.S.A. 2A:4A-26(a)(1) and (2). The court also found there was a probability defendant could be rehabilitated in accordance with the time requirements of N.J.S.A. 2A:4A-26, but that ultimately his prospects for rehabilitation did not outweigh the reason for waiver. The court considered the testimony as well as defendant's background, noting the improvement in defendant's behavior during the years he lived with his father. The court further noted defendant's two years at Harborfields and increased maturity supported a finding of potential rehabilitation.

However, the court considered five factors, outlined in State in the Interest of C.A.H. and B.A.R., 89 N.J. 326, 344-45 (1982), and determined that "clearly, grave offenses were committed[,] . . . [t]he acts perpetrated upon the victim were particularly heinous, and are of the type the legislation and the [c]ourts have advised engender the need for deterrence," and that defendant's actions were deliberate. The Family Part judge granted the State's motion, finding the State met the probable cause threshold to waive jurisdiction and defendant's prospects for rehabilitation did not substantially outweigh the reason for waiver.

On May 10, 2012, an Atlantic County grand jury indicted both defendant and R.J.[1] The charges against defendant included two counts of first-degree kidnapping, N.J.S.A. 2C:13-1(b); second-degree conspiracy, N.J.S.A. 2C:5-2; two counts of first-degree carjacking, N.J.S.A. 2C:15-2(a)(2)&(4); first-degree conspiracy, N.J.S.A. 2C:5-2; two counts of first-degree robbery, N.J.S.A. 2C:15-1; second-degree conspiracy, N.J.S.A. 2C:5-2; four counts of first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a); second-degree conspiracy, N.J.S.A. 2C:5-2; second-degree possession of a weapon for unlawful purposes, N.J.S.A. 2C:39-4(a); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b);

---

[1] Though defendant and R.J. were both listed on the indictment, both were tried separately, and R.J. is not a party to this appeal.

third-degree conspiracy, N.J.S.A. 2C:5-2; and fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4).

On November 22, 2013, defendant pled guilty to first-degree robbery and second-degree sexual assault. As part of the plea agreement, the State recommended an aggregate sentence of eighteen years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, which included a ten-year sentence for the first-degree robbery charge and an eight-year consecutive sentence for the second-degree sexual assault charge.

On November 14, 2014, defendant, then age nineteen, was sentenced to an aggregate eighteen-year prison term, subject to parole ineligibility under NERA. Defendant was also subject to mandatory parole supervision and Megan's Law consequences. The other charges were dismissed. This appeal followed.[2]

---

[2] On April 29, 2016, defendant moved to supplement the appellate record to include a videotaped statement made by the victim at the police station on the day following the events in question. By order of June 3, 2016, the motion was deferred to the merit panel. We granted the motion and reviewed the videotape for the sake of completeness.

Defendant argues the State manipulated the record by relying on Detective Herrerias' hearsay testimony, rather than the videotape, because the videotape account offers a more reliable and accurate account of the incident.

Notably, defendant provides no explanation about when the defense came into possession of the videotape and why it was not part of the record. In particular, defendant provides no explanation about why Detective Herrerias was not cross-examined about any alleged inconsistencies between her testimony and the

Defendant raises the following arguments on appeal:

POINT I.

     THE COURT ERRED IN WAIVING J.D. TO ADULT COURT BECAUSE THE PROBABILITY OF HIS REHABILITATION PRIOR TO THE AGE OF NINETEEN SUBSTANTIALLY OUTWEIGHED THE REASONS FOR THE WAIVER.

     A. Legal Framework.

     B. The Family Court Failed to Apply Correct Legal Standards Resulting in a Clear Error Judgment.

          1. The Family Court Erred by Failing to Provide Any Reasons as to How J.D.'s Waiver Would Deter Crime.

          2. The Family Court Incorrectly Analyzed the Gravity of the Crime and Deliberateness Prongs of the Test Established in <u>C.A.H.</u>

          3. Application of Proper Legal Principles Indicates that Waiving J.D. to Adult Court is Unnecessary to Specifically Deter Him.

          4. Application of Proper Legal Principles Indicates that Subjecting J.D. to the More Severe Sentences in Adult Court is Highly Unlikely to Deter Similarly Situated Individuals.

     C. J.D.'s Trial Counsel Was Ineffective, Resulting in Prejudice to J.D.

POINT II.

     J.D.'S EIGHTEEN-YEAR SENTENCE MUST BE VACATED AND THE MATTER REMANDED BECAUSE THE COURT FAILED TO APPLY THE <u>YARBOUGH</u> GUIDELINES, FAILED TO CONSIDER J.D.'S AGE-15 AT THE TIME OF THE OFFENSE, AND FAILED TO PROPERLY ASSESS AGGRAVATING AND MITIGATING FACTORS.

---

videotaped statement. More significantly, defendant does not argue, nor do we discern, any errors on the part of either the Family Part judge or the sentencing judge in not considering the videotape.

A. The Court Failed To Conduct A <u>Yarbough</u> Analysis Before Imposing Consecutive Sentences. Had It Properly Done So, It Would Have Found That The Factors Set Forth in <u>Yarbough</u> Counsel Against Imposition Of Consecutive Sentences.

B. The Court Failed To Consider J.D.'s Age And Attendant Circumstances During Sentencing.

C. The Court Failed To Properly Weigh Aggravating and Mitigating Factors.

I.

We review juvenile waiver cases under an abuse of discretion standard. <u>State in re V.A.</u>, 212 <u>N.J.</u> 1, 25-26 (2012). We consider "whether the correct legal standard has been applied, whether inappropriate factors have been considered, and whether the exercise of discretion constituted a 'clear error of judgment' in all of the circumstances." <u>State v. R.G.D.</u>, 108 <u>N.J.</u> 1, 15 (1987) (quoting <u>State v. Humphreys</u>, 89 <u>N.J.</u> 4, 13 (1982)); <u>State in Interest of J.F.</u>, 446 <u>N.J. Super.</u> 39, 51-52 (App. Div. 2016).

Our review requires that "1) findings of fact be grounded in competent, reasonably credible evidence, 2) correct legal principles be applied, and 3) the judicial power to modify a trial court's exercise of discretion will be applied only when there is a clear error of judgment that shocks the judicial conscience." <u>J.F.</u>, <u>supra</u>, 446 <u>N.J. Super.</u> at 52. We defer to the family part's expertise, but reverse if "the trial court has erroneously applied

the governing principles of law[.]" In re State ex rel. A.D., 212 N.J. 200, 215 (2012); J.F., supra, 446 N.J. Super. at 52.

At the time of defendant's crime, N.J.S.A. 2A:4A-26 controlled juvenile waivers.[3] See State in Interest of N.H., 226 N.J. 242, 248-49 (2016). The statute provided, in pertinent part, that:

> On a motion by the prosecutor, a court shall, without the consent of the juvenile, waive jurisdiction over a case . . . if it finds, after hearing, that:
>
> (1) The juvenile was 14 years of age or older at the time of the charged delinquent act; and
>
> (2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:
>
> > (a) Criminal homicide other than death by auto, strict liability for drug induced deaths, pursuant to [N.J.S. 2C:35-9], robbery which would constitute a crime of the first degree, carjacking, aggravated sexual assault, sexual assault, aggravated assault which would constitute a crime of the second degree, kidnapping, aggravated arson, or gang criminality . . . .
>
> [N.J.S.A. 2A:4A-26.]

If the court finds both elements are met, then it must engage in further analysis:

_____

[3] This statute was repealed and replaced by N.J.S.A. 2A:4A-26.1, effective on March 1, 2016.

> If the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted. . . .
>
> [N.J.S.A. 2A:4A-26(e).]

When a defendant demonstrates the potential for rehabilitation by age nineteen, "the court must then determine whether the prospects for rehabilitation overcome the need for deterrence in the given case." C.A.H., supra, 89 N.J. at 338-39. Thus, the court balances the defendant's rehabilitation against deterrence of crime. The deterrence concept is twofold: whether the punishment will dissuade the individual offender from committing the criminal acts again and whether the punishment will discourage others from committing similar offenses. Id. at 334-35. Such analysis must account for the following factors: (1) the commission of a grave offense; (2) the deliberateness of conduct; (3) an older juvenile offender; (4) the offender's past record of infractions; (5) and the offender's background of delinquency and exposure to the juvenile justice system. Id. at 344-45.

Here, the court found defendant was fifteen years and seven months old at the time of the alleged offenses and probable cause existed that he committed the alleged offenses. These findings are entitled our deference.

The court engaged in the next level of analysis and evaluated the evidence and testimony presented by both parties at the hearings, including expert testimony. The court found there was a probability defendant could be rehabilitated by age nineteen, that defendant's behavior had improved while he was at Harborfields, and there was evidence of increasing maturity.

The court then balanced defendant's rehabilitation against deterrence, finding defendant's rehabilitation did not outweigh the reason for the waiver. See ibid. Specifically, the court found grave offenses present as defendant was charged with committing five of ten crimes characterized as waivable offenses pursuant to N.J.S.A. 2A:4A-26(2)(a).

Based upon the testimony of Dr. Atkins and Dr. Schlesinger, as well as testimony from the victim, the court found defendant "acted with deliberateness of conduct and purpose with respect to the offenses for which he has been charged." The court found defendant was of at least average intelligence and free will, and although reluctant, acted at his own behest.

The third factor, an older juvenile offender, did not apply, since defendant was fifteen at the time of the alleged offenses. As to the fourth factor and fifth factors, the court found defendant's past record showed a negligible record of infractions and some exposure to the juvenile justice system.

13                                            A-3221-14T4

We reject defendant's assertion that the court evaluated the C.A.H. factors without consideration of how the waiver promotes individual deterrence or general deterrence, and failed to provide a required statement of reasons.

In balance, the court found defendant's potential for rehabilitation did not outweigh the reasons for the waiver and deterrence. We cannot say this was an abuse of the court's discretion.

Defendant asserts the court incorrectly analyzed the gravity of the crime and deliberateness prongs of C.A.H., supra, 89 N.J. at 344-45, and engaged in "double counting," placing additional emphasis on the elements of the "heinous" crimes committed. He asserts his "conduct was [not] heinous beyond the elements of the crimes themselves," arguing he tried to "extricate himself from the situation" and was less culpable than R.J.

The gravity of the crime prong is "perhaps the most obvious and potent factor in the favor of deterrence[.]" C.A.H., supra, 89 N.J. at 345. Here, the court made a finding based on substantial credible evidence there was probable cause to believe defendant pointed a gun at the victim, pressured her not go to the police, and ejaculated into her mouth while she was being raped by R.J. Defendant acted in a manner beyond that required for a conviction on the charged offenses, and imposed excessive violence on the

victim. Cf. State v. Carey, 168 N.J. 413, 425-26 (2001); State v. Dunbar, 108 N.J. 80, 96-97 (1987); State v. Noble, 398 N.J. Super. 574, 599 (App. Div. 2008).

As to the second prong, defendant contends his acts were not purposeful or deliberate conduct. We disagree. The court found defendant acted with deliberateness, reasoning that he was of average intelligence and free will, agreed to robbing someone, allegedly walked away "high-fiving" his co-conspirator, and there was sufficient evidence in the record to infer defendant knew about the gun.

Deliberate conduct is volitional and nonimpulsive behavior. C.A.H., supra, 89 N.J. at 335. Perhaps defendant did not set out with deliberate action to sexually assault the victim, and may have only acted in the moment. However, the record demonstrates defendant knew he and R.J. planned to carjack and rob someone using a gun. He knew or should have known that such actions would result in additional danger. Thus, defendant acted with deliberateness in the inception of his actions. Moreover, the two targeted a vulnerable victim, which shows a degree of planning.

Defendant next argues the court erred in waiving him to adult court under the premise of individual deterrence. Defendant argues subjecting him to the more severe sentences in adult court is highly unlikely to deter similarly situated individuals, because

15

juveniles are less likely to consider punishment when making decisions, and general deterrence, divorced from individual deterrence, has insignificant penal value. Both of these arguments are without merit.

Defendant emphasizes that juveniles lack maturity, are less likely to consider punishment, and argues the court failed to engage in an analysis of the penal value and deterrence. Defendant provides no support for the first two assertion. Furthermore, when criminal conduct is of "'pressing public' concern," courts "should give 'priority to punishment as a deterrence to others and as an aid to law enforcement.'" State v. Onque, 290 N.J. Super. 578, 586 (App. Div. 1996) (quoting C.A.H., supra, 89 N.J. at 336). Rehabilitation is "more appropriately reserved for cases involving 'relatively minor antisocial conduct of juveniles[,]'" ibid. (quoting C.A.H., supra, 89 N.J. at 337), not "for juveniles who have committed serious offense," when "the range of discretion for courts to balance deterrence and rehabilitation is greatly reduced." Ibid. (quoting State v. Scott, 141 N.J. 457, 472 (1995)).

"Protection of the public is not limited to ensuring society's safety or physical security from the offender; rather, deterrence is a relevant factor in its objective of preventing future criminal conduct by both the juvenile and others." R.G.D., supra, 108 N.J.

16                                          A-3221-14T4

at 7 (citing C.A.H., supra, 89 N.J. at 334).  Here, such punishment
is aimed at the general population of individuals who commit
heinous acts similar to those of the defendant.  Defendant did not
only commit these crimes, but also appreciated the criminal nature
of his actions.

## II.

Defendant argues his consecutive eighteen-year sentence must
be vacated because the court did not apply the guidelines set
forth in State v. Yarbough, supra.[4]  Defendant argues the

---

[4]  Though there are no statutorily set rules for imposing
consecutive sentences, the Court, in Yarbough, adopted six
criteria for such situations:

> (1) there can be no free crimes in a system
> for which the punishment shall fit the crime;
>
> (2) the reasons for imposing either a
> consecutive or concurrent sentence should be
> separately stated in the sentencing decision;
>
> (3) some reasons to be considered by the
> sentencing court should include facts relating
> to the crimes, . . . including whether or not:
>
> > (a) the crimes and their objectives were
> > predominantly independent of each other;
> >
> > (b) the crimes involved separate acts of
> > violence or threats of violence;
> >
> > (c) the crimes were committed at
> > different times or separate places,
> > rather than being committed so closely

sentencing court did not account for defendant's age and attendant circumstances, and did not properly weigh the aggravating and mitigating factors. Our review of a criminal sentence is governed by the "clear abuse of discretion" standard. State v. Roth, 95 N.J. 334, 363 (1984). We consider whether the sentencing guidelines were violated, whether the aggravating and mitigating factors were determined based upon credible evidence within the record, and whether the sentence shocks the judicial conscience.

---

in time and place as to indicate a single period of aberrant behavior;

(d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous;

(4) there should be no double counting of aggravating factors;

(5) successive terms for the same offense should not ordinarily be equal to the punishment for the first offense; and

(6) there should be an overall outer limit on the cumulation of consecutive sentences for multiple offenses not to exceed the sum of the longest terms (including an extended term, if eligible) that could be imposed for the two most serious offenses.

[Yarbough, supra, 100 N.J. at 643-44 (footnotes omitted); see also State v. Zuber, 227 N.J. 422, 429 (2017).]

<u>Id.</u> at 364-65. Sentences entered into in accordance with negotiated plea agreements are presumed reasonable. <u>State v. Fuentes</u>, 217 <u>N.J.</u> 57, 70-71 (2014).

Defendant contends, under <u>Yarbough</u>, proper application of the required analysis, before imposing consecutive sentences, would have prevented defendant's current sentence. This argument is without merit.

Courts "may impose consecutive sentences even though a majority of the <u>Yarbough</u> factors support concurrent sentences." <u>Carey</u>, <u>supra</u>, 168 <u>N.J.</u> at 427-28; <u>see also</u> <u>State v. Swint</u>, 328 <u>N.J. Super.</u> 236, 264 (App. Div.) (holding that concurrent sentences were not mandated even where the crimes were connected by a "unity of specific purpose, . . . were somewhat interdependent of one another," and were both committed in a short time frame), <u>certif. denied</u>, 165 <u>N.J.</u> 492 (2000). Our courts recognize that "there should be no free crimes[.]" <u>Swint</u>, <u>supra</u>, 328 <u>N.J. Super.</u> at 264.

Additionally, sentencing courts must provide a separate statement of reasons for imposing consecutive sentences, or risk a remand for resentencing. <u>State v. Miller</u>, 108 <u>N.J.</u> 112, 122 (1987). However, we may affirm a consecutive sentence "where the facts and circumstances leave little doubt as to the propriety of the sentence imposed." <u>State v. Jang</u>, 359 <u>N.J. Super.</u> 85, 97-98

19

(App. Div.), certif. denied, 177 N.J. 492 (2003). Thus, a sentence need not be modified or remanded if it is not "clearly mistaken." Id. at 98 (quoting State v. Kromphold, 162 N.J. 345, 355 (2000)).

Here, as in Jang, the sentencing court did not expressly explain why it imposed consecutive sentences. However, defendant has not shown the sentencing court was "clearly mistaken." The attendant "facts and circumstances leave little doubt" about the sentence imposed. Id. at 97-98.

The prosecutor provided the context of defendant's crimes and negotiated sentences to the sentencing court. Furthermore, the court reasoned, on the record, that taking into account all the evidence and testimony provided, including the horrid consequences suffered by the victim, the plea agreement was fair to all parties. Finally, and perhaps most importantly, defendant entered into this plea agreement, knowing full well about the consecutive sentences. As such, the sentencing court's rationale is indirectly ascertained, and there is no reason to remand. See Miller, supra, 205 N.J. at 129-30 ("[S]entences can be upheld where . . . [w]e can safely 'discern' the sentencing court's reasoning.").

We reject the assertion the court did not consider defendant's age and attendant circumstances, including his background, mental, and emotional development as required by Miller v. Alabama, 567 U.S. 460, 476-77, 132 S. Ct. 2455, 2467, 183 L. Ed. 2d 407, 422

20                                              A-3221-14T4

(2012).  See Graham v. Florida, 560 U.S. 48, 68, 130 S. Ct. 2011, 2026, 176 L. Ed. 2d 825, 842-43 (2010); see also, Roper v. Simmons, 543 U.S. 551, 569-71, 125 S. Ct. 1183, 1195-96, 161 L. Ed. 2d 1, 21-22 (2005).  These cases limit the possible sentences imposed upon juveniles, Zuber, supra, 277 N.J. at 438-39, and all dealt with juvenile defendants who had either been sentenced to capital punishment, or under sentencing schemes that require life imprisonment without possibility of parole.  Here, defendant was sentenced, pursuant to a plea agreement, to a maximum imprisonment of eighteen years — even less when considering NERA.  Moreover, the sentencing court clearly accounted for defendant's age and background, either by notice from the prosecutor or raised in its own reasoning.

Finally, defendant argues the sentencing court did not properly weigh the aggravating and mitigating factors.  In reviewing such arguments, we affirm if the trial court properly identified and balanced the factors that are supported by competent credible evidence.  State v. O'Donnell, 117 N.J. 210, 215-16 (1989).  Here, the sentencing judge noted a presumption of imprisonment for the two counts within the purview of the plea agreement.  He then found that aggravating factors one, three, and nine, of N.J.S.A. 2C:44-1(a), applied.

Defendant contends that the court did not specify the facts supporting aggravating factor one, which considers "the severity of the defendant's crime, 'the single most important factor in the sentencing process,' assessing the degree to which defendant's conduct has threatened the safety of its direct victims and the public." State v. Lawless, 214 N.J. 594, 609 (2013) (internal citations omitted) (quoting State v. Hodge, 95 N.J. 369, 378-79 (1984)). The record reflects the court found the prosecutor's summary credible, and adopted it accordingly. Furthermore, the court again noted the pain and struggle the victim endured. The heinous nature of defendant's crime is apparent in the record.

Regarding aggravating factor three, the risk that defendant will commit another offense, the court determined although defendant did not have a prior history of offenses, there was evidence within the record to support re-offending, including defendant's lack of remorse and minimization of his role.

The court also found aggravating factor nine, the need for deterrence, existed. In this regard, the court determined that the entire sentence was "ultimately about" deterrence. This entire record, notably the juvenile waiver, supports this finding.

Finally, the court found mitigating factor seven existed, as the adverse to defendant's lack of previous criminal activity. The court then determined that "the aggravating factors clearly

22                                                    A-3221-14T4

preponderate[.]"  We cannot say the sentence imposed here "shocks the judicial conscience."  O'Donnell, supra, 117 N.J. at 216.

Finally, defendant claims his trial counsel was ineffective, resulting in prejudice to him.  Because defendant's ineffective assistance claim would be more appropriately addressed in a separate post-conviction relief appeal we do not address it here.  See State v. Preciose, 129 N.J. 451, 459-60 (1992).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION